## LEE E. LOEFFLER V. ROY H. KING ET AL.

No. A-2651. Decided January 10, 1951.
Rehearing overruled March 14, 1951.
(236 S. W., 2d Series, 772.)

*Geo. E. B. Peddy,* and *Wm. M. Bonner,* both of Houston, for petitioner, Lee E. Loeffler.

The Court of Civil Appeals erred in failing to award plaintiff a judgment for an undivided 1/6th interest in the minerals; in failing to render a judgment for petitioner against respondents for the value of all the oil heretofore produced and hereafter to be produced for the land involved, or at least his interest in same. Gulf Production Co. v. Spear, 125 Texas 530, 84 S. W. 2d 452; Great A. & P. Tea Co. v. Evans, 142 Texas 1, 175 S. W. 2d 249; Burham v. Hardy Oil Co. 108 Texas 555, 195 S. W. 1139.

*Cantey, Hanger, Johnson, Scarborough & Gooch,* of Fort Worth, *Kenneth Johnson* and *Guy Rogers,* of Wichita Falls for Roy H. King, and others, *Smead & Harbour,* of Longview, for Paul B. Scott and others, *Frank Bunting* and *Stine & Stine,* all of Henrietta, for Lilyan Chilson and another, all respondents.

The Court of Civil Appeals erred in holding that in accepting a deed in which grantor conveyed "1/12th of the 1/8th royalty interest" in the land subject to a valid and subsisting oil and gas lease thereon plaintiff herein, grantee of said deed, did not

effectively ratify, adopt or confirm the lease he and others had executed covering such interest. Said court also erred in failing to find that the evidence was insufficient to sutsain a finding that the lease had terminated by reason of want of production, there being at all times production in paying quantities. Grissom v. Anderson, 125 Texas 26, 79 S. W. 2d 619; Reserve Petroleum Co. v. Hodge, 147 Texas 115, 213 S. W. 2d 456; Watkins v. Slaughter, 144 Texas 179, 189 S. W. 2d 699.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

Since various parties to this litigation are both petitioners and respondents, the parties will be referred to by name or as designated in the trial court, wherein Lee E. Loeffler was plaintiff and all other parties were defendants. This is an action by plaintiff Loeffler against his co-tenants, their lessees, mortgagees, and purchasing agencies for an accounting and to establish his title to an undivided 1/6 mineral fee in the northeast 80 acres of the J. P. Meade Subdivision of Block 2, Margaret Ramsey Survey, Wichita County, containing approximately 154.3 acres, and also to establish a like and proper percentage according to the acreage in the production, past, present, and future from all the four wells drilled adjacent to plaintiff's south boundary line. The trial court denied plaintiff any recovery, except that to which he was entitled as the owner of royalty. Its judgment was reversed by the Court of Civil Appeals and the cause remanded. 228 S. W. 2d 201. The opinion of the Court of Civil Appeals states the case in detail. Under the views which we entertain of the controlling questions of law for decision, an abridged statement only need be made.

■ Subject to certain mineral leases below mentioned, Mrs. Lilyan Chilson is the owner in fee of all of the 154.3-acre tract, except an interest in the minerals in the northeast 80 acres thereof owned by plaintiff. The nature and extent of plaintiff's interest is one of the issues in the case. That interest was acquired by him in this manner: One H. H. Haggard owned in fee 1/6 of the minerals in and under the 80-acre tract, subject to an outstanding mineral lease. On March 21, 1930, he executed a deed to plaintiff Loeffler and W. H. Rankin which the trial court construed to be a conveyance of his royalty only. The Court of Civil Appeals held that it conveyed all of Haggard's 1/6 interest in the minerals in the 80-acre tract. We agree with the holding of the Court of Civil Appeals on that issue. While in the granting clause the interest described was

"1/6 of the 1/8 royalty," other provisions of the deed divested Haggard of all his interest in the minerals. It provided that 1/6 of the money rentals which might be paid to extend the term should be paid to the vendees, and that in the event the lease terminated the lease interests and all future rentals on the land or mineral privileges would be owned by the vendees, together with a 1/6 interest in all future rents. Construing the deed as a whole, it is clear that Haggard retained no interest in the minerals, and the effect of his deed, therefore, was to convey his 1/6 mineral estate to Loeffler and Rankin.

The lease outstanding when the deed from Haggard to Loeffler and Rankin was executed, and which was referred to in the deed above mentioned, terminated and thereafter by an instrument dated December 17, 1945, Loeffler and Rankin executed a mineral lease to Al Horwitz. The Court of Civil Appeals held, contrary to the holding of the trial court, that at some date after the expiration of its primary term this lease terminated through the failure of the lessee to produce oil in paying quantities or to make good faith attempts to continue production. Under our view we find it unnecessary to decide that question, for the reason that, even if the lease terminated, it was later revived in the manner discussed below.

The Court of Civil Appeals further held that the acceptance by Loeffler and Rankin of a small royalty payment after the claimed date of the termination of the lease did not operate as a ratification thereof. For the same reason as that above stated we find it unnecessary to decide that question.

■ The controlling question in the case arose in this manner: On October 27, 1944, Mrs. Chilson executed a mineral lease to J. H. Cottom, purporting to cover the entire mineral estate in the 154.3-acre tract. By mesne conveyances the lease as to the north 80 acres of that tract was acquired by Lacy Armour and others and as to area south of the north 80 acres, it was acquired by Paul V. Scott and others. The division line between the Armour lease and the Scott lease was approximately 300 feet north of the south line of the northeast 80-acre tract in which Loeffler has a mineral interest. Armour and Scott also acquired by assignment the lease executed by Loefffler and Rankin to Horwitz, employing the same division line between their leases as that employed in dividing the Chilson lease. On July 19, 1948, Armour et al. completed their first deep well on the portion of the northeast 80-acre tract covered by their lease. That well is still producing. Later, they completed another well on the same

lease, which also is still producing. Shortly after the completion of the first deep producing well by Armour et al., Rankin by deed dated August 2, 1948, conveyed to Loeffler his royalty interest of 1/12 in the entire northeast 80-acre tract. That deed conveyed to Loeffler "an undivided 1/12 of 1/8 royalty interest" in and to the minerals under that tract. The deed contained this further provision:

"It is distinctly understood and herein stipulated that said land is under an Oil and Gas lease made-by-Granter providing for a royalty of 1/8 of the oil and certain royalties or rentals for gas and other minerals, * * *."

■ The trial court held that by the acceptance of this deed Loeffler ratified the Horwitz lease. The Court of Civil Appeals held that the language above quoted was not a sufficient identification of any lease to constitute a ratification thereof. We agree with the holding of the trial court on that question. It will be observed that the words "made by Grantor" were blocked out of the printed portion of the deed. To our minds no particular legal significance can be attached to that fact. It clearly does not evidence a denial of the existence of the Horwitz lease. That lease was executed by Loeffler and Rankin jointly, and not by Rankin alone. To block out a recital that it was made by Rankin left the description just as accurate as, if not more accurate than, with the recital therein. It is obvious to us from a construction of this instrument as a whole that the lease referred to therein was the lease executed by Loeffler and Rankin to Horwitz. That instrument conveyed a 1/12 royalty interest. There is no intimation in the record that Rankin owned any royalty interest save that provided in the lease to Horwitz. The presumption is that that is the interest which he intended to convey. In order for a royalty deed to operate as a ratification of a mineral lease, it is not required that such deed describe the lease with that accuracy necessary for an assignment of the lease. By authority of an unbroken line of decisions by this court it must be held that, by the execution and acceptance of the royalty deed the parties ratified and gave new life to the Horwitz lease, even if it had in fact theretofore terminated. Grisson v. Anderson, 125 Texas 26, 79 S. W. 2d 619; Humble Oil and Refining Co. v. Clark, 126 Texas 262, 87 S. W. 2d 471; Greene v. White, 137 Texas 361, 153 S. W. 2d 575; Reserve Petroleum Co. v. Hodge, 147 Texas 115, 213 S. W. 2d 456, 7 A.L.R. 2d 288; Leopard v. Stanolind Oil and Gas Co., 220 S. W. 2d 259, Writ Refused, N. R. E.

The same result would follow even if it should be decided

that the reference in the royalty deed was not to the Horwitz lease. Had that lease never been executed, the inquiry would be, to what lease did the deed refer? Mrs. Chilson and Loeffler and Rankin were tenants in common as to the minerals in and under the northeast 80 acres. Mrs. Chilson, as above noted, had theretofore executed a mineral lease purporting to cover the entire mineral estate under the 154.3-acre tract, of which the 80-acre tract is a part. It is not questioned that that lease was in effect at the time the royalty deed was executed and that much production was being had thereunder. By accepting a royalty deed which recognized the validity of Mrs. Chilson's lease, Loeffler and Rankin would have ratified and adopted it and brought their interest within its terms. Turner v. Hunt, 131 Texas 492, 116 S. W. 2d 688, 689, 117 A.L.R. 1066; Texas and Pacific Coal and Oil Co. v. Kirtley, 288 S. W. 619, writ refused; Van Deventer v. Gulf Production Co., 41 S. W. 2d 1029, writ refused.

■■ The record discloses that on July 27, 1949, Rankin executed to Loeffler a so-called correction deed making some changes in the terms of the deed of August 2, 1948. This correction deed did not recognize the validity of any outstanding lease. It is the position of Loeffler that his title was acquired by the correction deed, and that the August 2, 1948, instrument is not in his chain of title. In that connection he points to evidence to the effect that Rankin did not actually appear before the notary to acknowledge the instrument of August 2, 1948. If it be conceded that the acknowledgment was irregular, that would not affect the validity of the instrument as between the parties. R. S. Art. 6627. Since, as we have held above, the effect of the deed of August 2, 1948, was to ratify or revive the Horwitz lease, Loeffler and Rankin could not invalidate that lease by a transaction between themselves to which the owners thereof were not parties. Property rights cannot be destroyed in that manner.

■ In the opinion of the Court of Civil Appeals it is stated that its holding on some of the questions presented for decision was that the evidence was insufficient to support the finding of the trial court with respect thereto. If the record presented a case in which there was conflicting evidence, and the Court of Civil Appeals in the exercise of its jurisdiction should hold that the evidence was insufficient to support the findings of the trial court, that is to say, that such findings were so against the weight and preponderance of the evidence as clearly to be wrong, this court would have no jurisdiction to review such holdings and would be required to allow the case to stand reversed and remanded to the trial court. That is not the record before us. There

is no conflicting oral evidence and the Court of Civil Appeals based its conclusions upon its interpretation of written instruments in the record. Further, there was no assignment in the Court of Civil Appeals presenting the question that the evidence was insufficient to support any finding of the trial court. The only questions before the Court of Civil Appeals upon which it based its reversal of the judgment of the trial court were questions of law of which we have jurisdiction. We, therefore, are not concluded by the statement in the opinion of the Court of Civil Appeals that the evidence was insufficient to support certain findings.

Much of the briefs and oral argument in this case was directed to questions of the rights of Loeffler in and to the production from wells drilled below but near to the south boundary line of the northeast 80-acre tract. His claimed rights are based upon the theory that he is the owner of a 1/6 mineral estate in the 80 acres unencumbered by any mineral lease. No question is presented for decision on any other theory. Under our holding that the tract is under a valid lease, it becomes unnecessary to consider the very interesting questions raised as to what his rights might have been had his theory that the tract had been freed of any lease been sustained.

We find no error in the judgment of the trial court, and, accordingly, it is ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered January 10, 1951.

Associate Justice Wilson not participating.

Rehearing overruled March 14, 1951.