SUN OIL COMPANY

v.

Harry L. MARTIN, V. F. Neuhaus and Rio Grande Valley Gas Co.

Civ. A. No. 1515.

United States District Court
S. D. Texas.
Brownsville Division.
June 11, 1963.

Carter, Stiernberg, Skaggs & Koppel, Jack Skaggs, Harlingen, Tex., and Charles F. Heidrick and Edwin M. Cage, Dallas, Tex., for plaintiff.

Black & Stayton, John W. Stayton, Austin, Tex., for defendant Harry L. Martin.

Fouts, Moore, Williams & Caldwell, Joseph W. Moore, Houston, Tex., and Kelley, Looney, McLean & Littleton, L. C. McLean, Edinburg, Tex., for defendants V. F. Neuhaus and Rio Grande Valley Gas Co.

GARZA, District Judge.

On September 29, 1958, the Railroad Commission of Texas granted to Defendant Harry L. Martin permission to triply complete the McKinsey, et al., Well No. 1 in the Shepherd Field, Hidalgo County, Texas. As completed, the lower tubing of this well was to produce oil and gas from the McKinsey Sand reservoir, the upper tubing was to produce gas from the Mellinger Sand reservoir, and the casing was to produce gas from the Martin Sand reservoir.

A packer setting affidavit and results of a packer leakage test were furnished the Railroad Commission to show compliance with its rules prohibiting communication of gas from two different reservoirs within the bore of a single well.

The well was produced under monthly allowables granted by the Railroad Commission, until January 15, 1962.

Plaintiff, Sun Oil Company, contends that all of the gas produced through the casing annulus, instead of being from the Martin Sand, was in fact from the Mellinger Sand which had leaked around the packer set in the well bore.

Plaintiff alleges that the gas produced from November 1, 1958, until January 15, 1962, through this McKinsey Well No. 1–C was produced in violation of statewide Rules 15 and 22 of the Railroad Commission which prohibit the producing of oil or gas from different reservoirs through the same casing or other producing string, and that such wrongful production amounted to a conversion of Plaintiff's pro rata share of the total gas in place in the Mellinger Sand reservoir.

The action is one for damages caused by Defendants' alleged violation of said Railroad Commission rules, or for the value of its gas allegedly converted wrongfully and/or negligently by Defendants.

In a hearing before the Railroad Commission on October 25, 1961, Plaintiff contended that the packer in Defendants' multiply completed McKinsey well was leaking, and requested that McKinsey Wells 1–C and 1–UT (the casing and upper tubing completions) be shut in, that McKinsey 1–C remain shut in until satisfactory proof be made that no further communication of gas existed, and that the McKinsey 1–UT producing from the Mellinger Sand be shut in until the alleged overproduction of Mellinger gas was made up.

At the request of other operators in the Shepherd Field, the Railroad Commission had ordered packer leakage tests in January, 1961, and again in May, 1961, but had taken no further action other than to continue to grant monthly allowables to McKinsey, et al., Well No. 1. However, after the above hearing was held at the request of the Plaintiff, another packer leakage test was ordered by the Commission, as a result of which the McKinsey Wells 1–C and 1–UT were shut in because of packer leakage.

On April 25, 1962, after an additional packer leakage test was conducted in March, 1962, the Railroad Commission approved assignment of a normal gas allowable to the McKinsey 1–UT well, thus denying Plaintiff's request that this well remain shut in until the alleged overproduction of Mellinger gas through the McKinsey 1–C had been made up.

Defendants Harry L. Martin, V. F. Neuhaus and Rio Grande Valley Gas Company, owners of the mineral leasehold estate in the S. Joe McKinsey lease, have filed motions for summary judgment or for order of dismissal of this action, thus raising the following questions:

1. Does the Railroad Commission of Texas have primary jurisdiction of the issues here presented?

2. Did the granting of gas allowables to the McKinsey Well No. 1 from November 1, 1958, until January 15, 1962, constitute a finding that the packer in the well bore was not leaking, which is res judicata and not subject to collateral attack in this Court?

3. Was Plaintiff's election to proceed before the Railroad Commission such an election of remedies as to bar this action, and has Plaintiff exhausted its administrative remedy?

The administration of the enormous and complex oil and gas industry in Texas has been committed by the Legislature to the Railroad Commission. Arts. 6004 et seq., V.T.C.S.

"The handling of this great industry and its complex problems calls for the services of trained persons. It is utterly impossible for the Legislature to meet the demands of every detail in the enactment of laws relating to the production of oil and gas. The duty to carry out the just and reasonable public policy as is provided for under Article XVI, Section 59a, of the Constitution, has been placed with the Railroad Commission."—Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961, at p. 964.

Article 6008 contains the following declaration of policy:

"Sec. 1. In recognition of past, present and imminent evils occurring in the production and use of natural gas, as a result of waste in the production and use thereof in the absence of correlative opportunities of owners of gas in a common reservoir to produce and use the same, this law is enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production."

Section 10 states:

"Sec. 10. It shall be the duty of the Commission to prorate and regulate the daily gas well production from each common reservoir in the manner and method herein set forth. The Commission shall prorate and regulate such production for the protection of public and private interest:

"(a) In the prevention of waste as 'waste' is defined herein;

"(b) In the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir to produce and use or sell such gas as permitted in this Article."

Section 14 provides for proration between wells and for balancing of overproduction in order to adjust the correlative rights and opportunities of each owner to produce, use and sell gas from a common reservoir where the market demand is seasonal.

No attack is made here on the constitutionality of either the statutes conferring on the Commission the power to make rules and regulations, or any rules or regulations themselves.

Because of the difficulty of administering the laws involved here and the complexity of the industry as a whole, the Commission has broad discretion. 43 T.J.2d, "Oil and Gas", secs. 598 and 618.

Orders of the Commission relating to oil and gas are likened to judgments of a court, and provision is made for judicial review by a court of competent jurisdiction in Travis County, Texas. Corzelius v. Harrell, supra; 43 T.J.2d, "Oil and Gas", sec. 657.

Such controversies as the one presented here involve "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." Railroad Commission v. Rowan & Nichols Oil Co., (1940), 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368; Reh. den., 311 U.S. 614, 61 S.Ct. 66, 85 L.Ed. 390, and 311 U.S. 727, 61 S.Ct. 167, 85 L.Ed. 473.

That case was a suit in equity to enjoin a system of proration ordered by the Railroad Commission of Texas. The United States Supreme Court held that such difficult problems as proration and fair allocation of oil and gas reserves were the special function of the Railroad Commission in its administrative judgment and should not be determined by a

federal court upon the conflicting testimony of experts. "It is not for the federal courts to supplant the Commission's judgment even in the face of convincing proof that a different result would have been better." Same case 310 U.S. at p. 584, 60 S.Ct. at p. 1025.

As to the system of thorough judicial review established by the Texas Legislature, it has been said that "the Texas Courts are working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry."—Burford v. Sun Oil Co., 319 U.S. 315, at p. 326, 63 S.Ct. 1098, at p. 1103, 87 L.Ed. 1424, reh. den., 320 U. S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851.

This case involves no federal question and Plaintiff bases jurisdiction in this Court on diversity of citizenship, claiming that it is the type of suit that could be brought in state court in the county where the land lies on which the disputed operations took place. The Plaintiff, as a basis for this suit, relies on Article 6049c, Section 13, which states:

"Sec. 13. Nothing herein contained or authorized, and no suit by or against the Commission, and no penalties imposed upon or claimed against any party violating any Statute of this State, or any rule, regulation or order of the Commission, shall impair or abridge or delay any cause of action for damages, or other relief, any owner of any land or any producer of crude petroleum oil or natural gas, or any other party at interest, may have or assert against any party violating any rule, regulation or order of the Commission, or any judgment herein mentioned. Any party owning any interest in any property or production which may be damaged by any other party violating this Act or any other Statute of this State prohibiting waste or violating any valid rule, regulation or order of the Commission, may sue for and recover such damages, and have such other relief as he may be entitled to in law or in equity."

Plaintiff contends that it may sue for the conversion of its gas by the overproduction on Defendants' adjoining lease, or for damages caused by Defendants' violation of Commission rules. It relies upon cases which have allowed actions to be brought against adjoining lessees, or those having correlative rights in a common reservoir.

In Gregg v. Delhi-Taylor Oil Corporation, 344 S.W.2d 411, the Supreme Court of Texas held in a suit to enjoin an oil and gas lessee from sand fracturing the common formation beyond his own property lines into the lease of an adjoining lessee, that the theory of primary jurisdiction did not oust the court of such an inherently judicial issue as trespass, particularly where the Commission had made no rules regarding the sand fracturing process.

Although the violation of a conservation statute or of an order of the Commission may give rise to an action for damages, very few cases have allowed recovery by an adjoining landowner for drainage from operations merely made illegal under conservation statutes.

The rule of capture has limited the right of ownership which a landowner has in the oil and gas lying beneath the surface of his property. The exceptions to this rule have been applied in a line of cases allowing recovery of damages by an owner of correlative rights in a common reservoir. Peterson v. Grayce Oil Co. (Tex.Civ.App.), 37 S.W.2d 367, and Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781, allowed a recovery to the adjacent leaseholder for drainage resulting from the use of vacuum pumps in violation of Railroad Commission Rule 40.

Loeffler v. King (Tex.Civ.App.), 228 S.W.2d 201, rev. 149 Tex. 626, 236 S.W. 2d 772, involved an action for improper drainage of oil by three wells which were drilled less than the minimum distance from the lease line, required by the spacing rules of the Commission.

In Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558, 4 A.L.R.2d 191, the Supreme Court allowed an ac-

tion for damages resulting from a blowout of a well drilled by the defendant, which destroyed a well on plaintiff's land and resulted in the waste of large quantities of oil and gas.

The last in this line of cases was Phillips Petroleum Co. v. American Trading and Production Corp., 361 S.W.2d 942, by the El Paso Court of Civil Appeals. This case was appealed to the Supreme Court and writ of error was refused by the Supreme Court, N.R.E., on May 22, 1963.

In this case the El Paso Court of Civil Appeals, speaking through Chief Justice Langdon, held that an owner of correlative rights in a common reservoir could sue another owner for overproduction from that reservoir where the well involved was drilled in violation of a Railroad Commission order. The defendants in the case had applied to the Commission for an order granting them a special permit (as an exception to the applicable field density order) to drill and produce a gas well on the land involved. The defendants in that case then appealed from the Commission's order denying the permit, to the District Court of Travis County, and obtained a trial court injunction enjoining enforcement of the order and any interference with the drilling or production of the well.

The Commission, one of the plaintiffs in that cause, amongst others, appealed the injunction given by the District Court, and during the pendency of the injunction the defendant American Trading and Production Corporation completed and produced the well in question.

The Court of Civil Appeals upheld the order of the Commission denying the permit, and reversed and rendered the trial court's order granting the injunction. American Trading then appealed, unsuccessfully, to the Supreme Court of Texas and to the Supreme Court of the United States.

Phillips Petroleum and others then brought this suit against American Trading and Production Corporation, et al., asking that a dispute as to who was entitled to receive the monetary proceeds derived from the sale of oil and gas produced from such well be decided by the court. The trial court dismissed the action, holding that on the basis of the pleadings it was without jurisdiction. The El Paso Court of Civil Appeals then held, 361 S.W.2d at page 945:

"If it be alleged by one or more of the operators, or other owners of interests in a particular field, that they own or possess the exclusive or correlative rights with others to take from a common reservoir, and it is alleged that another, not entitled to take from such common reservoir, has taken therefrom; or, *if such other be entitled to take, that he has exceeded his production allowable (overproduced) under the field rules applicable to such reservoir; such is sufficient, in our opinion, to state a cause of action against the one so taking, and to require a trial of the issues on the merits.* Peterson v. Grayce Oil Co., Tex.Civ. App., 37 S.W.2d 367; Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S. W.2d 781; Loeffler v. King, Tex.Civ. App., 228 S.W.2d 201 [rev.], 149 Tex. 626, 236 S.W.2d 772; Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558 (see also 4 A.L.R.2d 191); Turnbow v. Lamb, 5 Cir., 95 F.2d 29."—Emphasis supplied.

The Plaintiff here contends that their petition alleges that the Defendants, although entitled to take gas from the common reservoir, have overproduced under applicable rules of the Commission, and that such allegations are sufficient to state a cause of action against the ones so taking and to require a trial of the issues on the merits.

This Court believes that this case can be distinguished from the case at bar.

The cases cited immediately above have established the general rule that, as stated in the annotation to Elliff v. Texon Drilling Co., supra, 4 A.L.R.2d 191, at 204:

" * * * an owner or lessee of oil or gas lands who negligently or

wilfully or maliciously permits gas or oil in unreasonable quantities to escape from the ground and run to waste is liable to his neighbors in the amount of damages which, with the requisite degree of certainty, they are able to establish were suffered by them in respect of the common reservoir."

This rule is an exception to the rule of capture which is well defined in the Texon case:

"That rule simply is that the owner of a tract of land acquires title to the oil or gas which he produces from wells on his land, though part of the oil or gas may have migrated from adjoining lands. He may thus appropriate the oil and gas that have flowed from adjacent lands without the consent of the owner of those lands, and without incurring liability to him for drainage."— Elliff v. Texon Drilling Co., supra, 210 S.W.2d at p. 561.

The existence of correlative rights between various landowners over a common reservoir is recognized by the Railroad Commission and the courts in ruling that each landowner should be afforded the opportunity to produce his fair share of the recoverable oil and gas beneath his land.

"It must be conceded that under the law of capture there is no liability for reasonable and legitimate drainage from the common pool. The landowner is privileged to sink as many wells as he desires upon his tract of land and extract therefrom and appropriate all the oil and gas that he may produce, so long as he operates within the spirit and purpose of the conservation statutes and orders of the Railroad Commission. * * * No owner should be permitted to carry on his operations in reckless and lawless irresponsibility, but must submit to such limitations as are necessary to enable each to get his own."— Elliff v. Texon Drilling Co., supra, 210 S.W.2d at p. 562.

Thus the rule of capture affords nonliability for reasonable drainage from a common reservoir with the exception of negligent waste or illegal production.

As stated by the Court of Appeals for the Fifth Circuit in Magnolia Petroleum Co. v. Blankenship, 85 F.2d 553, where the defendant "is at peace with the Commission and the State", an action to enjoin production of an oil well drilled in compliance with Railroad Commission orders could not be maintained in federal court. Plaintiff's remedy, if the adjoining lessee was producing too much oil, was to apply to the Railroad Commission for a rule of proration among all competing wells.

The doctrine of primary jurisdiction relied on by Defendants, states that

"The courts will not determine a question within the jurisdiction of an administrative agency prior to the decision by the agency where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal."—73 C.J.S. Public Administrative Bodies and Procedure § 40.

The application of this doctrine in Texas is outlined in Kavanaugh v. Underwriters Life Ins. Co., Tex.Civ.App., 231 S.W.2d 753; also 43 T.J.2d, "Oil and Gas", sec. 596.

"It is too plain to admit of debate that, under our oil and gas conservation statutes, the Commission, being the statutory enforcement agency, must, as a general rule, also be the primary, or original, statutory fact finding agency."—Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, at p. 81.

"The Railroad Commission has been given exclusive original jurisdiction to fix proration for natural gas fields in this State. Art. 6008, §§ 10, and 24; Art. 6049c, §§ 5, 7 and 8; Art. 6053, Vernon's Ann. Civ.Stats."—Chenoweth v. Nordan and Morris, Tex.Civ.App., 171 S.W. 2d 386, at p. 388.

This case held that operators of gas wells being dissatisfied with the proration which pipeline operators were enforcing in the field could not sue for discrimination without seeking a hearing before the Railroad Commission which had exclusive original jurisdiction to fix proration, and in the event the Commission refused to hear such matters, resort could be had to the district court either by appeal or by application for mandamus.

The questions presented in this case involve highly technical matters with which the Railroad Commission and the Courts of Travis County are particularly qualified to deal.

It is obvious that great confusion would result if state and federal district courts everywhere in Texas attempted to determine the great number of proration problems which arise.

If the former orders of the Railroad Commission granting monthly gas allowables to defendants, or the failure to require that the 1–UT well remain shut in were in error, then the judicial review provided by statute would bar any appeal to this Court.

"Where the constitution or statutes specifically name the courts having jurisdiction to review decisions or actions of administrative agencies, review may not be had in any other courts."—73 C.J.S. Public Administrative Bodies and Procedure § 174.

"The very 'confusion' which the Texas legislature and Supreme Court feared might result from review by many state courts of the Railroad Commission's orders has resulted from the exercise of federal equity jurisdiction. As a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statutes provide."—Burford v. Sun Oil Co., supra, 319 U.S. at p. 327, 63 S.Ct. at p. 1104; 43 T.J.2d, "Oil and Gas", sec. 664.

This case involves no question of trespass or title to property which would bring it within the jurisdiction of this Court. The fact issues of whether gas was leaking and how much gas Defendants have taken from the Mellinger Sand should be first determined by the Railroad Commission. Plaintiff, if dissatisfied with the Commission's findings, has its statutory procedures which provide for thorough judicial review in Travis County.

"This court has repeatedly held that an order of the Railroad Commission, regular on its face, is presumed to be valid, and will be enforced unless set aside in a direct proceeding brought for that purpose; and, furthermore, it is not subject to collateral attack."—Corzelius v. Harrell, supra, 186 S.W.2d at p. 967, and cases cited.

It appears from the record of the Railroad Commission hearing held in October, 1961, that there was some question as to the propriety of an order shutting in Defendants' Mellinger completion until its alleged overproduction was made up. Defendants having objected on the grounds that such an order would be beyond the scope of the hearing held, it may be that Plaintiff may request another hearing to present evidence on this point.

In oral argument on the pending motions, Plaintiff has asserted to the Court that even if Defendants were prohibited from producing any more gas from the Mellinger Sand, there would be insufficient gas left in that sand for them to recover what they have lost by the alleged conversion.

The fact remains that the Defendants are still producing from that sand, and any judgment rendered by this Court on the state of the present pleadings would not bar the Defendants from continuing to produce. A well-settled general rule of law is that one being damaged must make every attempt to minimize his damages. As long as the Defendants continue to produce from the common

reservoir, the Plaintiff will continue to be damaged. No attempt has been made by Plaintiff to have the well complained of shut in by the Commission, since apparently they abandoned their request in the hearing above referred to. Once the Commission finds that gas was wrongfully taken by Defendants, the question of damages for gas that may never be made up will then arise for the first time.

Although Plaintiff may designate this an action for conversion as an alternative, this Court feels that such an action will not lie where Defendants are in possession of their well under an undisputed claim of title and have removed the gas in question in compliance with gas allowable orders of the Railroad Commission. 43 T.J.2d, "Oil and Gas", sec. 572; 29 Texas Law Review 111; Gulf Land Co. v. Atlantic Refining Co., supra.

Defendants have committed no trespass on Plaintiff's property and have in no way increased their production of gas through artificial means.

The conversion action relied on by Plaintiff, Lone Star Gas Co. v. Murchison, Tex.Civ.App., 353 S.W.2d 870, involved Defendant's taking of gas from his own land which had already been captured by plaintiff and stored by injecting it into a natural underground reservoir. This is not such an action because Plaintiff had never reduced to possession the gas involved herein.

The Plaintiff by its present suit is asking this Court to make specific findings of overproduction, the amount of said overproduction, and in fact a finding that the rules of the Commission have been violated, without first giving the Commission an opportunity to pass on this question. The statutes give the Commission the primary responsibility for this finding, and no court should interfere with its right to do so or to defend its finding if judicial review is sought. The Defendants in this cause are at peace with the Commission and the State, and this Court should not interfere. Magnolia Petroleum Co. v. Blankenship, 85 F.2d 553 (C.C.A., 5th Cir., Jly. 7, 1936).

This Court holds that the Railroad Commission of Texas does have primary jurisdiction of the issues here presented, and that whatever findings the Commission has already made are not subject to collateral attack in this Court.

Plaintiff's election to proceed before the Railroad Commission does not make applicable the doctrine of election of remedies under this holding that the administrative remedy is the only remedy available at this time to Plaintiff and it has not been exhausted.

This case involves administrative problems of State regulation which should be left to the agency and courts empowered to handle them as "one more item in a continuous series of adjustments." Railroad Commission v. Rowan & Nichols Oil Co., supra, 310 U.S. at p. 584, 60 S.Ct. at p. 1025, Burford v. Sun Oil Co., supra; 43 T.J.2d, "Oil and Gas", sec. 664.

Once the Plaintiff has secured a finding that there was overproduction, either by an order of the Commission or from an appropriate court judicially reviewing the Commission's finding, then and only then can they proceed in this Court for the damages they seek. Phillips Petroleum Co., et al. v. American Trading and Production Corp., et al., supra, by the El Paso Court of Civil Appeals, had this finding before it in truth and in fact, for the Commission had refused American Trading and Production Corporation a permit to drill an additional well on the lease, apparently on the grounds that to do so would cause them to overproduce. Such finding is lacking in the present cause.

Defendants' motion for an order of dismissal is granted because of this Court's present lack of jurisdiction.

It is, therefore, ordered, adjudged and decreed by this court that this cause be, and the same is hereby dismissed.