**Naomi Augustine SPELLMAN, et al., Appellants,**

v.

**AMERICAN UNIVERSAL INVESTMENT COMPANY, et al., Appellees.**

**No. 13–82–329–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 28, 1984.

Rehearing Denied Jan. 24, 1985.

Patton G. Lochridge, McGinnis, Lochridge & Kilgore, Austin, for appellants.

Frank Honea, Dallas, for appellees.

## OPINION

PER CURIAM.

Appellants seek to rescind or reform a Mineral Deed into which they were allegedly induced to enter because of fraudulent misrepresentations made by appellees. Appellees deny wrongdoing and contend that appellants ratified the agreement. The trial court rendered a take-nothing judgment against appellants. We affirm the judgment of the trial court.

In late August of 1978, appellees sought to purchase mineral interests in land from appellants Mrs. Rabel, Mrs. Hurley, and Mrs. Spellman, who testified that they were unknowledgeable in such matters. The negotiations prior to the transaction therefore took place between Mr. Burl Swafford, appellees' representative, and Mr. Frank Spellman, an independent oil and gas landman and husband of one of the appellants. Mr. Swafford and Mr. Spell-

man agreed that appellants would sell one half of the minerals they owned. Since appellants owned only 16/28 of the minerals, the total minerals sold was alleged to be 8/28. Approximately two weeks later, Mr. Swafford produced another contract for appellants to sign. Mr. Spellman was out of town; when Mrs. Spellman telephoned him to relate her confusion about the new deal, Mr. Spellman told her to sign the deal he had arranged with Mr. Swafford. On September 12, 1978, appellants signed a contract under the terms of which they conveyed an undivided one-half of the minerals that might be produced from their tract of land. Appellants testified that they thought that they were selling only one-half (8/28) of *their* interest in the minerals, rather than one-half (14/28) of the *entire* interest; they learned of their mistake approximately three weeks later. Appellants were left with only 2/28 of the minerals. Mrs. Rabel conveyed her interest to Mrs. Hurley and Mrs. Spellman in October of 1978.

The record contains a document entitled "Rental Division Order with Ratification" which was signed by Mrs. Hurley and Mrs. Spellman in December of 1979; this document stated that appellees owned 14/28 of the minerals, and that Mrs. Hurley and Mrs. Spellman each owned 1/28. It is undisputed that Mrs. Hurley and Mrs. Spellman also signed a Gas Division Order in April of 1980, and that they received payment for delay rentals from the Rental Division Orders and began receiving checks for royalties. Appellants testified that they did not intend to affirm the transaction by signing the Division Orders; however, the jury found that appellants "executed the subsequent division orders with intent to accept [appellee's] claim to title to the minerals under the Mineral Deed."

Appellants first contend that the trial court erred by denying their cause of action for rescission of the Mineral Deed. Appellants argue that appellees' defense of "ratification" was not established because the signing of Division Orders constitutes ratification only in certain circumstances not present in this case. Appellants specif-

ically argue (1) that because none of the Division Orders referred specifically to the Mineral Deed, the royalties received were attributable to the interest *retained* by appellants, and that the delay rentals were due them as a matter of *right*, because they would have received them even if the challenged Mineral Deed had never existed, and (2) that the only evidence of ratification was the signing of the Division Orders and acceptance of delay rentals; thus, there was no evidence that appellants *intended* to ratify the Mineral Deed. Appellants insist that to hold otherwise would force them to either accept the payments or reject the deed, a dilemma inapposite to true ratification, which operates to prevent a party from setting aside a transaction *and* accepting the benefits of the transaction.

■ "The right to rescind a contract may be lost by action and conduct which shows an affirmation or ratification of the contract after knowledge of facts which are grounds for rescission. One who has the right to rescind after acquiring knowledge thereof may exercise that right or retain his rights and benefits under the contract. He cannot have both." Thus, where parties by their conduct and action recognize contracts as subsisting and binding, they thereby affirm the contracts after acquiring knowledge of the facts which entitled them to rescind. This is the equivalent of a ratification of the contract. *Payne v. Baldock*, 287 S.W.2d 507 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.).

"Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate. [Citation omitted.] Ratification occurs when one, induced by fraud to enter into a contract, continues to accept benefits under the contract after he becomes aware of the fraud or if he conducts himself in such a manner as to recognize the contract as binding.... Once a contract has been ratified by the defrauded party ..., the defrauded party waives any right of rescission or damages." *Wise v.*

*Pena,* 552 S.W.2d 196 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd).

An express ratification is not necessary; any act based on a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission. *Rosenbaum v. Texas Bldg. & Mort. Co.,* 140 Tex. 325, 167 S.W.2d 506 (1943); *Newsom v. Starkey,* 541 S.W.2d 468 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.); *Guion v. Guion,* 475 S.W.2d 865 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r. e.). Thus, any retention of the beneficial part of the transaction affirms the contract and bars an action for rescission, as a matter of law. *Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892 (1960); *Rosenbaum* at 508.

In addition, mental intent or reservation does not affect determination of the question. *Oram v. General American Oil Company of Texas,* 513 S.W.2d 533 (Tex. 1974); *Goldring v. Goldring,* 523 S.W.2d 749 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.).

Even if appellants stated that they did not intend to ratify the lease by accepting *rental* payments, the acceptance of the payments was inconsistent with the intention to avoid the lease. The acceptance of the payments recognized the lease as subsisting and binding; the effect is to waive or abandon any right of rescission or of attack upon the initial invalidity, if any, of the lease. *Oram* at 534.

Thus, the acceptance of the royalty checks by appellants with knowledge that they were in payment for royalty from the mineral deed, when considered with the fact that they knew of the Division Orders, constituted a ratification of the action of appellees. *Yelderman v. McCarthy,* 474 S.W.2d 781 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Leopard v. Stanolind Oil & Gas Co.,* 220 S.W.2d 259 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r. e.). *See also Loeffler v. King,* 149 Tex. 626, 236 S.W.2d 772 (1951); *Goldring* at 761.

Other courts have held that, when the validity of a lease contract is in dispute, execution of a Division Order and the acceptance of payments under it operate as ratification of the lease referred to in the order. *Gulf Oil Corporation v. Marathon Oil Co.,* 137 Tex. 59, 152 S.W.2d 711 (1941); *City National Bank in Wichita Falls v. Bradshaw,* 433 S.W.2d 955 (Tex.Civ.App.—Fort Worth 1968, no writ); *Texas & Pacific Coal & Oil Co. v. Kirtley,* 288 S.W. 619 (Tex.Civ.App.—Eastland 1926, writ ref'd).

Appellants contend that the case of *Westbrook v. Atlantic Richfield Company,* 502 S.W.2d 551 (Tex.1973) held that "a subsequent instrument may ratify a prior invalid instrument only if the second instrument makes clear and unambiguous reference to the first instrument" and that, as a matter of law, "execution of a rental division ·order which does not refer to the invalid Mineral Deed and which does not result in the receipt of benefits attributable to the transaction allegedly ratified . . . . does not constitute ratification." Appellants strongly urge that, since the Division Orders in the case before us contained no "specific reference to the instrument ratified," the *Westbrook* holding is dispositive of this action.

The issue in *Westbrook* was whether a party's *ratification* of certain agreements in November of 1964 *revived* an oil and gas lease which had *expired* in April of 1962. The scope of *Westbrook* was restricted to applying "the rule of revivor by subsequent instruments;" thus, the Court found that the 1964 agreements failed to revive the expired lease because:

"There is no direct statement of ratification in words clear or otherwise. Nor is there any inference of validity of the [expired] lease or *even of its existence.*"

We do not find that the *Westbrook* opinion controls the issues before us.

We hold that the record contains sufficient evidence to justify submitting the pleaded defense of ratification to the jury, and to justify the granting of appellees' motion for judgment on the basis of

the jury's finding that appellants ratified the Mineral Deed. Appellants' action for rescission of the Mineral Deed was properly denied, and their first, third, and fourth points of error are overruled.

In their second and fifth points of error, appellants contend "that the Mineral Deed should be *reformed* on the basis of unilateral mistake coupled with knowledge of the mistake and inequitable conduct on the part of [appellees]." Appellants argue that the "jury returned answers favorable to [appellants] on all of the issues necessary to support reformation of the Mineral Deed to reflect the true agreement of the parties," and allege that ratification was not raised as a defense to *reformation.*

The jury returned its answers to the special issues on August 19, 1982, and a hearing on the motions for judgment was held on September 10, 1982. The trial court then granted appellees "leave to file a trial amendment ... conforming the pleadings to the evidence on issues tried by consent of the parties," and noted that the amendment would not surprise or prejudice appellants. The amendment charged that appellants "have waived any right to rescission *or reformation* by reason of ratification of the Mineral Deed" [emphasis added]. In their sixth point of error, appellants contend that leave to amend the pleadings should not have been granted after the verdict of the jury had been returned.

■ In the absence of fraud, a written contract will not be reformed in equity unless there is a mutual mistake of the parties. However, "[K]nowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake." Thus, "[w]here there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties." *The Cambridge Companies, Inc. v. Williams,* 602 S.W.2d 306 (Tex.Civ.App.—Texarkana 1980, *aff'd*

*on other grounds,* 615 S.W.2d 172 (Tex. 1981)).

■ Under the general rule, the elements of actionable fraud are: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that the party acting upon the representation thereby suffered injury. *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183 (Tex.1977).

The jury found that appellees materially misrepresented to appellants that (a) the Mineral Deed reflected the agreement reached between Mr. Swafford and Mr. Spellman and (b) by signing the Mineral Deed, appellants "did not sell 8/28 of the minerals, but in fact would sell one half of their minerals." The jury further found that these misrepresentations were made with the intention to induce appellants to sign the deed; that appellants justifiably relied on the misrepresentations and were injured as a result of that reliance; that appellees knew that their misrepresentations were false; and that appellees knew of appellants' mistake at the time the deed was executed. The jury concluded that the true agreement of the parties was for appellants to sell 2/7 (8/28) of their interest; that the deed was acquired from appellants through an unconscionable course of conduct; and that enforcement of the deed as made would be unconscionable because appellants' "mistake is of so great a consequence." These findings support appellants' cause of action to reform the deed.

Appellants note that ratification was never pleaded by appellees as a defense to reformation, and contend that they were unaware that appellees were asserting this defense until the post-verdict pre-judgment hearing.

It is clear that sufficient evidence was adduced at trial to show that appellant's cause of action for *rescission* was barred

by ratification; the question remains whether the jury finding that appellants executed the Division Orders "with intent to accept [appellees'] claim to title to the minerals under the Mineral Deed" may be applied also to *reformation,* to which no defense of ratification was pleaded.

Appellees plead ratification as follows:

"Plaintiffs have waived any right to rescission by reason of ratification of the Mineral and Royalty Deed to American Universal Investment Company through their execution of deeds by gifts and division orders and their acceptance of payments of delay rentals and royalties based on such deeds and division orders with prior knowledge of all of the alleged wrongdoing set forth in Plaintiff's First Amended Petition."

Appellant's objection to the ratification issue was as follows:

"The final one I have goes to Special Issue No. 17 as to ratification. I believe that although the Special Issue itself properly sets out the test of intent for ratification; however, there has been no evidence of intent, there being no evidence to support an answer of 'yes,' no evidence of attempt to ratify. So, there is nothing to support a 'yes' answer. Further, there is no pleadings [sic] to support the submission of plaintiffs' intent, and did not plead intent in his recent pleading."

▬ This objection fails to point out the deficiency of the pleadings now urged by appellants. Rule 274 of the Texas Rules of Civil Procedure requires a party to "point out distinctly the matter to which he objects and the grounds of his objection." From the record as a whole, it is clear that appellees were relying throughout the trial on ratification as a defense to appellants' claim of rescission and reformation. When the Court prepared the charge containing the ratification issue, appellants were required to distinctly and specifically state their objection or the objection is waived. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 938 (Tex.1980).

▬ Appellants need not have objected to the trial evidence on ratification because that evidence was properly admitted on appellees' pleaded defense to rescission; but, by failing to point out specifically and distinctly the lack of pleading at the time the issue was submitted, appellants deprived appellees of their opportunity to seek a trial amendment at that time. *See Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 637 (Tex.1982). Thus, even assuming that appellees' plea of ratification did not assert a defense against reformation because of the phrase "to rescission," the trial court did not abuse its discretion in allowing the post-verdict trial amendment. Appellants' second, fifth and sixth points of error are overruled.

The judgment of the trial court is AFFIRMED.

KENNEDY, Justice, dissenting.

I respectfully dissent. I would hold that the failure of appellees to plead ratification as a defense to reformation should have denied them a jury issue on this point. The majority holds that the issue was tried by consent since evidence was offered to show ratification as a defense to *rescission,* which was pled, and that the same evidence should be considered on the question of reformation, to which was not plead as a defense.

The case of *Musso v. Cronley,* 422 S.W.2d 840 (Tex.Civ.App.—Waco 1967, no writ) involved a boundary dispute. Appellants pleaded that they acquired title to the contested land under a 25-year statute of limitations, but failed to plead that they acquired title by adverse possession under a *ten* year statute. Appellant argued that the issue was tried by implied consent, but the Court stated:

The purpose of Rule 94 is to give the opposing party notice of the defensive issues to be tried. *Petroleum Anchor Equipment, Inc. v. Tyra* (Tex.Sup., 1967) 419 S.W.2d 829, 835; *Reid v. Associated Employers Lloyds,* Tex.Civ.App., 164 S.W.2d 584, writ ref. Appellee was given notice that evidence would be adduced

on the 25-year statute, not the other. The evidence offered was admissible under the pleaded statute, and was relevant to the issue pleaded. It was not incumbent on appellee, consequently, to object to the evidence on the ground it was not within the pleading in order to avoid waiver. Such an objection would have been untenable since there was pleading to support admission of the evidence.

*Musso,* 422 S.W.2d at 841. Similar holdings are found in the cases of *Watts v. Watts,* 563 S.W.2d 314 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.), *Yarbrough v. Cooper,* 559 S.W.2d 917 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

Appellants were not required to speculate whether appellees intended the evidence on ratification to apply to the cause of action for reformation as well as that for rescission, especially when appellees could have resolved the matter through proper pleading. Appellants were entitled to infer from appellees' pleading that the reformation action was being defended solely on the elements necessary for appellees to prove ratification in order to establish their right to recovery.

Ratification is a plea in avoidance, and thus is an affirmative defense which must be pleaded unless the issue was tried by consent. *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829 (Tex.1967); *Royal Typewriter Co. v. Vestal,* 572 S.W.2d 377 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ). I would hold that appellants need not have objected to the trial evidence on ratification, because that evidence was properly directed toward appellees' pleaded defense to rescission. The fact that the same evidence *could* also have constituted a defense to reformation does not mean that appellants waived their objection. Appellants need only object to evidence properly admitted on a properly pleaded defense in order to avoid trying an unpleaded issue by "consent."

I would hold that none of the evidence on ratification was properly attributable to appellant's cause of action for reformation because appellee failed to plead ratification as a defense to reformation. The trial court's decision to permit appellees to file a post verdict trial amendment on grounds that the issue was tried by consent therefore constituted an abuse of discretion. I would reverse the judgment of the trial court and order that the mineral deed be reformed to reflect that appellees own only 8/28 of the mineral interest in the land.

BENAVIDES, Justice, dissenting.

I respectfully join in the dissenting opinion by Associate Justice Noah Kennedy.