PHILLIPS PETROLEUM COMPANY et al.,
Appellants,

v.

AMERICAN TRADING AND PRODUCTION
CORPORATION et al., Appellees.

No. 5536.

Court of Civil Appeals of Texas.

El Paso.

Oct. 17, 1962.

Rehearing Denied Nov. 14, 1962.

Carl W. Jones, Raymond A. Lynch, W.
B. Browder, Midland, Wm. J. Zeman, Lloyd:
G. Minter, Bartesville, Okl., Stubbeman Mc-

Rae, Sealy, Laughlin, Midland, of counsel, for appellants.

Frank C. Ashby, Garland Casebier, Turpin, Kerr, Smith & Dyer, Midland, John S. McDaniel, Jr., Baltimore, Md., for appellees.

LANGDON, Chief Justice.

This suit arose over a dispute as to who is entitled to receive the monetary proceeds ($94,246.16) derived from the sale of oil and gas produced from a well drilled in violation of a valid order of the Texas Railroad Commission prohibiting the drilling and production of such well.

The well in question is known as the American Trading No. 1 Woody Heidelberg Well, and was located, drilled and produced by American Trading and Production Corporation on a 160-acre tract of land, the NW/4 of a certain Section 29 in the Azalea (Strawn) Gas Field in Midland County, Texas.

The suit was filed by Phillips Petroleum Company in the District Court of Midland County against certain designated parties named in the petition as "Group One Defendants" and other parties named as "Group Two Defendants". Appellees are the "Group One Defendants", consisting of American Trading and Production Corporation (American Trading) and the royalty owners under the 160-acre tract on which the Heidelberg well was drilled. Appellants are Phillips Petroleum Company and the "Group Two Defendants". Phillips and the "Group Two Defendants" either owned royalty, or other interest in production, or were the operators of all the other wells which were producing in the same field (Azalea (Strawn) Gas Field) as the American Trading well during the time that well was on production.

The judgment entered in this case is based solely on the pleadings. At a hearing on the exceptions to the pleadings of plaintiff Phillips and the cross-actions of certain of the Group Two defendants, the trial court sustained the exceptions, dismissed appellant Phillips' cause of action and the cross-actions of appellants O'Neill and others (Group Two defendants) and entered judgment for the total sum of the disputed proceeds ($94,246.16) in favor of American Trading and the other "Group One Defendants" on their cross-actions, for certain designated sums of money. From such judgment Phillips and the "Group Two Defendants" have perfected their appeal.

The suit had its origin in a prior suit between the Railroad Commission of Texas (with which appellants were aligned) and appellee American Trading, over the denial of the Railroad Commission to American Trading of a special permit (as an exception to the applicable field density order) to drill and produce a gas well on the NW/4 of Section 29. American Trading appealed from the Commission's order, denying the permit, to the District Court of Travis County and obtained a trial court injunction enjoining enforcement of the order and any interference with the drilling or production of the well, from which judgment the Commission, Phillips and the Group Two defendants involved in this suit appealed. During the pendency of the appeal, American Trading drilled, completed and produced the well in question. The Court of Civil Appeals upheld the order of the Commission denying the permit to American Trading, and it reversed and rendered the trial court's judgment. Thereafter, the Supreme Court of Texas refused the application for writ of error, and the Supreme Court of the United States denied certiorari.

Gas and distillate was produced from the well throughout the period of litigation, from January, 1959 until the mandate of the Court of Civil Appeals was filed and the well was shut-in by the Commission on July 31, 1959. Since Phillips was the only purchaser of gas and distillate in the field during the time the well was being produced, it took the production from such well without discrimination, but placed the proceeds therefrom, amounting to $94,246.16, in sus-

pense pending final determination of the prior litigation. On August 11, 1959, after the mandate was filed in the prior case, Phillips filed this suit in the District Court of Midland County and, thereafter, tendered and paid into the registry of such court the $94,246.16 in dispute.

Special field rules for the Azalea (Strawn) Gas Field were adopted by the Commission on November 21, 1957, and these rules, together with the Commission's Statewide Density Order, had the effect of permitting only one well to be drilled on each 640-acre tract in the Azalea (Strawn) Gas Field. On the effective date of these rules O'Neill, one of the appellants herein, owned the oil and gas leasehold estate on the NW/4 of Section 29 (on which the Heidelberg well was later drilled) and also owned the SE/4 of said Section 29, on which a well had already been located. Since O'-Neill owned both the NW/4 and the SE/4 of the section on the date the rules became effective, and had already located a well on the SE/4, the Commission assigned an allowable for the O'Neill well on the basis of a 320-acre unit consisting of the NW/4 and SE/4 of Section 29. Thereafter, on January 22, 1958, O'Neill and others assigned their leasehold interest in the NW/4 to American Trading, although for allowable purposes such tract (160 acres) remained assigned to the O'Neill well on the SE/4, which continued to be produced on the basis of a 320-acre unit.

On May 6, 1958, American Trading filed an application with the Railroad Commission for a special permit to drill a well (the Heidelberg) on the NW/4 (160 acres) it had acquired from O'Neill, as an exception to the Commission's orders which prohibited the drilling of a well in this field on a tract containing less than 640 acres. When the application was denied, the litigation referred to above ensued, and the order of the Railroad Commission denying the application of American Trading to drill such well was eventually sustained by the courts. (Railroad Commission of Texas v. American Trading and Production Corporation,

Tex.Civ.App., 323 S.W.2d 474, ref'd. N.R. E.; American Trading and Production Corporation v. Railroad Commission of Texas, 361 U.S. 886, 80 S.Ct. 158, 4 L.Ed. 2d 121.)

In the pleadings filed in the instant suit, the appellant Phillips takes the position that the final judgment in the prior suit between the Commission and American Trading and the order of the Railroad Commission were and are res adjudicata and stare decisis of all matters there involved, including the fact that the Heidelberg well was never legally drilled and produced, and that the "Group One Defendants" are estopped and foreclosed to further litigate any such matter or issues. Phillips also asserts that the well was drilled and produced by American Trading while its right to do so was being contested; that American Trading deliberately overproduced the well by taking advantage of Statewide Rule 24(b) of the Railroad Commission which, in effect, allows a gas well to be produced at a rate of double its allowable provided the overproduction is made up during the following six months "balancing period", knowing that it (American Trading) would not have to make up the overproduction if it lost the prior suit and the well was required to be shut-in, as occurred. Phillips also contends that American Trading produced the well in question so as to violate even Statewide Rule 24(b) by producing gas in *excess* of double the allowable during the months of March and July, 1959, which was after the date the Court of Civil Appeals had reversed the judgment of the trial court, and the Supreme Court had refused American Trading's application for writ of error.

As we construe the pleadings filed by the appellants in the trial court, the basic contention of all the appellants seems to be that American Trading, in drilling and producing its Heidelberg well under the color of authority of a Railroad Commission permit which showed on its face to have been issued pursuant to a trial court injunction from which an appeal had been taken, knowingly assumed the risk that the trial court's

injunction might be dissolved and the Commission's order, denying a permit to drill and produce the well, reinstated. It is contended that the final effect of the prior litigation was to uphold the validity of the Commission's order denying the permit to drill and produce the well, thus rendering illegal the production of the gas and distillate obtained by American Trading from the common reservoir.

■ The function of the Railroad Commission with respect to the exercise of its regulatory powers in the oil and gas industry is not confined solely to the prevention of waste and the conservation of a natural resource. The Commission also has the duty, in cases where it has been determined (as it has here) that a common reservoir exists in which numerous parties share certain rights and interests, to promulgate field rules and orders applicable to such common reservoir for the protection of the correlative rights of all who are entitled to take from the common reservoir or share in the proceeds from such production.

■ If it be alleged by one or more of the operators, or other owners of interests in a particular field, that they own or possess the exclusive or correlative rights with others to take from a common reservoir, and it is alleged that another, not entitled to take from such common reservoir, has taken therefrom; or, if such other be entitled to take, that he has exceeded his production allowable (overproduced) under the field rules applicable to such reservoir; such is sufficient, in our opinion, to state a cause of action against the one so taking, and to require a trial of the issues on the merits. Peterson v. Grayce Oil Co., Tex. Civ.App., 37 S.W.2d 367; Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781; Loeffler v. King, Tex.Civ.App., 228 S.W.2d 201, 149 Tex. 626, 236 S.W.2d 772; Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W. 2d 558 (see also 4 A.L.R.2d 191); Turnbow v. Lamb, 5 Cir., 95 F.2d 29.

In the Grayce Oil Company case cited above, Peterson had installed vacuum pumps in wells on his own lease for the purpose of increasing their production, in violation of Rule 40 of the Railroad Commission. Grayce, owner of the adjacent lease, complained to the Commission, which ordered their discontinuance. Thereafter Grayce sued Peterson for the value of the oil drained beneath Grayce's lease by reason of the use of such vacuum pumps. In the trial court Grayce recovered both actual and exemplary damages, and Peterson appealed. While the case was reversed on appeal for errors in admission of evidence and in the charge, the existence of a cause of action and Grayce's right to recover for drainage resulting from a violation of Rule 40 were expressly upheld.

The case of Loeffler v. King, supra, involved numerous questions, among which was the question of whether a cause of action was asserted by plaintiff Loeffler against Scott for drainage of oil from Loeffler's land by Scott's wells, which were drilled on Scott's lease less than 330 feet from the lease-line, in violation of the applicable spacing rule of the Railroad Commission. The trial court held for Scott on the theory that under the law of capture he was not liable for oil drained from neighboring land and produced from his own wells. The Court of Civil Appeals reversed, and held that the trial court erred in not hearing appellant's cause of action raised by his pleadings upon the merits and the law relative to recovering the value of his oil which had been unlawfully drained from his land, if any, saying that the "trial court applied the stringent rule of capture in this case without applying its limitation, to-wit, 'legitimate operation.'" In the Supreme Court the judgment of the Court of Civil Appeals was reversed on other grounds, rendering it unnecessary for that court to pass on the question.

In the case of Elliff v. Texon Drilling Company, supra, by the Supreme Court, the Elliffs sued for damages to their mineral estate resulting from a blowout of a well drilled by Texon on other land on which Texon had an oil and gas lease. The blow-

**946**

out of the Texon well had led to the cratering and eventual destruction of a well on the Elliff's land and also resulted in the escape of large quantities of oil and gas from under Elliff's land. The Supreme Court defined the law of capture in this State as allowing the owner of minerals to drill for and produce the oil and gas from under his land only "so long as he operates within the spirit and purpose of conservation statutes and orders of the Railroad Commission. These laws and regulations are designed to afford each owner a reasonable opportunity to produce his proportionate part of the oil and gas from the entire pool and to prevent operating practices injurious to the common reservoir." In passing on the question involved, the Supreme Court also cited, with apparent approval, the holding of the Court of Civil Appeals in Peterson v. Grayce Oil Company, supra.

The consensus of authority appears to hold that the right of an owner to recover oil and gas from beneath his own land is qualified and is limited to "legitimate operations". Each owner whose land overlies a common reservoir has a like interest, and each must exercise his right with some regard to the rights of others, and must submit to such limitations as are necessary to enable each to get his own. Hague v. Wheeler, 157 Pa. 324, 27 A. 714; 22 L.R.A. 141.

We have concluded that the pleadings filed by appellant Phillips and the cross-actions filed by the "Group Two Defendants" each state a cause of action, and that the trial court erred in sustaining appellees' exceptions thereto and in rendering judgment in favor of such appellees solely on the pleadings, without a trial of the issues on the merits. We therefore sustain the points of error brought by appellants in so far as they attack the judgment of the trial court on that basis.

We have also considered the cross-assignments of error raised by the appellees herein, with respect to the trial court's re-

fusal to award attorneys' fees and interest on their cross-action. In view of the fact that our decision, as announced above, requires a reversal and remand of this case, we deem it unnecessary to pass on such cross-assignments of error.

The judgment of the trial court is reversed, and this cause is remanded with instructions that appellees' exceptions be overruled and that the case proceed to trial on the merits.

It is the judgment of this court that the costs incurred on this appeal should be taxed one-half against the appellees and one-half against appellants, and it is so ordered.