**SUN OIL COMPANY, Appellant,**

v.

**Harry L. MARTIN et al., Appellees.**

No. 20865.

United States Court of Appeals
Fifth Circuit.

April 3, 1964.

Rehearing Denied May 4, 1964.

Edwin M. Cage, Dallas, Tex., Jack Skaggs, Carter, Stiernberg, Skaggs & Koppel, Harlingen, Tex., Charles F. Heidrick, Dallas, Tex., for appellant.

Joseph W. Moore, Fouts, Moore, Williams & Caldwell, Houston, Tex., for appellees V. F. Neuhaus and Rio Grande Valley Gas Company.

John W. Stayton, Black & Stayton, Austin, Tex., for appellee Harry L. Martin.

Leon Jaworski, Houston, Tex., amicus curiae.

Before TUTTLE, Chief Judge, and HUTCHESON and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment based on a carefully considered opinion [1] of the district judge, dismissing the suit on the ground that the matter in controversy was one of which the Railroad Commission had primary jurisdiction and of which therefore the district court was without jurisdiction.

The question is exhaustively and well argued in the briefs of the parties, in a brief amicus curiae filed in this court, in the reply thereto, and also in the opinion of the district judge, and we are of the view that it would be to pile Pelion on Ossa for us to attempt further elucidation. We are content, therefore, to say that, for the reasons set out by the district judge in his opinion the judgment is right and should be affirmed.

We are well aware of the interest and importance of questions presented and argued here, and, but for the fact already noted that the district judge has dealt with the matters so fully and so correctly in his opinion, we should feel called upon to enter upon a lengthy discussion of the general principle of primary jurisdiction and to demonstrate the propriety of its application in this case. The district judge has, however,

---

[1]. Sun Oil Co. v. Martin et al., 218 F.Supp. 618.

exhaustively and we think correctly canvassed and discussed the facts and issue in this case as they bear upon the question decided and has cited and discussed most of the applicable authorities. It is sufficient, therefore, to say without more that we approve and adopt the district judge's opinion and the conclusions based thereon and affirm his judgment.

Affirmed.

TUTTLE, Chief Judge.

With deference I dissent.

The majority affirms the judgment of dismissal of this case on the authority of the opinion of the court below. I cannot agree with the majority decision or with the district court in finding that the matter in controversy was one of which the Railroad Commission had primary jurisdiction.

To understand the case the facts must first be set forth briefly, as they are not in the opinion of the court. In 1958 the Texas Railroad Commission granted defendants-appellees permission to make a triple completion well, the S. Joe McKinsey Well No. 1, on their leasehold estate in Hidalgo County, Texas. A triple completion is a well producing hydrocarbons from three separate reservoirs by means of three separate tubings. In this case, the lower tubing completion is in a deep reservoir not involved in this litigation. The uper tubing completion was granted an allowable to produce gas from the Mellinger sand reservoir, in which plaintiff and others had gas rights. In addition, defendant was granted an allowable to produce gas from a shallower reservoir, the Martin sand, through the space in the casing surrounding the two lower tubings. To prevent intermingling of gas from the Martin and Mellinger reservoirs, a packer was inserted in the casin around the two tubings at a point that would supposedly block off all access to the Mellinger sand through the casing well. After complaints were made that the packer was defective, and that Martin completion was receiving Mellinger gas, the Railroad Commission conducted a series of

tests on the packer. As a result of a test on December 21, 1961, the Commission issued an order January 10, 1962, decreeing that the casing well be shut in.

Plaintiff filed this suit seeking money damages for the gas alleged to have been wrongfully produced from the Mellinger sand through the casing well because of the defective packer. As noted above, the trial court dismissed the suit on the determination that primary jurisdiction is in the Texas Railroad Commission.

The Commission is empowered by statute to prorate and regulate daily gas well production for the protection of public and private interest in the prevention of waste and the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir. Tex.Civ.Stat.Ann. Art. 6008, § 10. When waste is found to exist, the Commission is directed to prorate and regulate gas production to eliminate that waste. § 12. Moreover, the Commission is to make rules and regulations to prevent crude petroleum oil and natural gas from escaping from the strata in which they are found into other strata. § 6(5). In carrying out this authority the Commission adopted Statewide Rules 15 and 22 prohibiting production of oil or gas from different strata through the same string of casing. These statutes and other broader ones, along with the Commission's regulations under them, are said by appellees and the court below to require that the first determination of the fact issues whether the gas was leaking and, if so, how much, be made by the Commission. See Sun Oil Co. v. Martin, 218 F.Supp. 618, 624 (S.D.Tex. 1963).

The doctrine of primary jurisdiction may be observed developing in the federal law as far back as Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), where the Supreme Court noted that it was primarily within the province of the Interstate Commerce Commission to pass on and consider any controversy concerning the unreasonableness of rates fixed before the ICC. It was held there that a shipper challenging the reasonable-

ness of an established rate must seek redress through the ICC. The statement of the rule of primary jurisdiction relied on below is that

"The courts will not determine a question within the jurisdiction of an administrative agency prior to the decision by the agency where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal."

73 C.J.S. Public Administrative Bodies and Procedure § 40, at 347.

In practical situations, the Supreme Court has several times ruled that matters brought into the federal courts should, in the exercise of equitable discretion, be left to the Texas Railroad Commission. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), involved a proceeding in equity to enjoin enforcement of a Commission order permitting the drilling of four wells on an East Texas plot. The Court noted that the complicated nature of the problems in oil production require regulation of an entire field as a unit for conservation purposes and affirmed the judgment of the district court dismissing the complaint. Similarly, in Railroad Comm'n of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368 (1940), the Court held that the wisdom of a proration system established by the Commission was not subject to review in the federal courts. See also Magnolia Petroleum Co. v. Blankenship, 85 F.2d 553 (5th Cir. 1936).

Those cases involved challenges to the wisdom or reasonableness of Commission regulations granting allowables and setting production limits, functions which are expressly confided to, and peculiarly appropriate to, the agency's administrative expertise. These orders were part of the Commission's general scheme for conservation of the state's oil and gas resources. The orders, in turn, were based on formulas for a fair allotment of allowable production which could properly be devised by the Commission and which could hardly be done by the courts. See Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. at 580, 60 S.Ct. at 1024, 84 L.Ed. at 1372–1373.

The case at bar, however, presents a clearly distinguishable situation. There is no challenge to the proration system and the suit would not, as has been suggested, result in a "great confusion" of federal court determinations of proration problems. To the contrary, there is here alleged a violation of the explicit rules and orders of the Commission implementing its proration program. The plaintiff seeks compensation, for the injuries said to have been incurred, by a money judgment—a remedy inherently judicial in nature. Should the plaintiff prevail, the elaborate regulations of the Commission would not be upset, rather the system of allotment would be brought more into line with that intended by the agency.

That the Texas legislature meant to allow court actions to *supplement* Commission rulings and regulations is plainly shown by Tex.Civ.Stat.Ann. Art. 6049c, § 13.[1] In addition, the highest state court in Texas has recognized the propriety of court action on controversies not squarely within the province of the Commission. Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411 (1961), held

1. "Sec. 13. Nothing herein contained or authorized, and no suit by or against the Commission, and no penalties imposed upon or claimed against any party violating any Statute of this State, or any rule, regulation or order of the Commission, shall impair or abridge or delay any cause of action for damages, or other relief, any owner of any land or any producer of crude petroleum oil or natural gas, or any other party at interest, may have or assert against any party violating any rule, regulation or order of the Commission, or any judgment herein mentioned. Any party owning any interest in any property or production which may be damaged by any other party violating this Act or any other Statute of this State prohibiting waste or violating any valid rule, regulation or order of the Commission, may sue for and recover such damages, and have such other relief as he may be entitled to in law or in equity."

the courts had jurisdiction over a suit to enjoin a producer from fracturing the gas producing formation under his land, which process allegedly would result in fracturing beyond his own property lines. The court allowed the suit in spite of the Commission's duty to make rules and supervise the drilling and shooting of wells. Id., 344 S.W.2d at 418. This would seem to make a much stronger case for raising the primary jurisdiction objection to that suit than to a suit for money damages, as here. Cf. Eliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558, 4 A.L.R.2d 191 (1948) (suit for damages resulting from a "blowout" gas well drilled by defendants).

Although the specific provision for suits contained in section 13 should be dispositive of the issue, it is claimed that primary jurisdiction exists in the Commission because that agency has available to it the best remedy—that of shutting in defendants' upper tubing well until the overproduction from the Mellinger reservoir has been redressed. Yet all agree that it is difficult to determine the amount of gas still left in any reservoir; there is no assurance that there would be sufficient gas left to allow the other producers in the field to obtain their fair share of any overproduction by defendants. Next, although the Commission is empowered to make initial allocations among producers and to prorate production to eliminate waste, has not been shown that the Commission has been delegated the power to adjudicate charges of violations and reallocate to compensate for overproduction. Finally, the same argument, that the Commission could take proper corrective action by adjusting allowables, was presented to the Texas Supreme Court in Gregg v. Delhi-Taylor Oil Corp., supra. The Court rejected it on the ground that each landowner owns the gas under his land and is accorded the usual remedies against trespassers who appropriate his minerals or destroy their market value. Id. 344 S.W.2d at 419.

Even if the proper construction of the Commission's role in this case is that it is empowered to make the initial, judicially binding determination of the facts, and I cannot agree that it is, then I believe a sufficient determination can be found. On May 19, 1961, a packer leakage test was made after which the Railroad Commission granted allowables for the McKinsey completions in both the Mellinger and Martin sands. But at a Commission hearing beginning October 25, 1961, plaintiff contended the packer was leaking and the agency ordered a retesting of the packer. This test was made December 21, 1961, and on the basis of that test the well was ordered shut-in January 10, 1962. If we must accept these Commission orders granting allowables or shutting-in the well as unassailable findings, as the defendants claim we must where the allowables have been granted, then we have a conclusive determination that some time after May 19 and before December 21 some gas escaped through the defective packer. How much escaped may be determined by the tribunal which is to award damages— *i.e.*, the court. The case of Phillips Petroleum Co. v. American Trading & Prod. Co., 361 S.W.2d 942 (Tex.Civ.App.1962) (writ of error refused, no reversible error), allowed an action to determine ownership of proceeds derived from the sale of oil and gas produced from a well drilled in violation of a Commission order prohibiting the well. In the course of its opinion the court gave its interpretation of the Texas law:

"If it be alleged by one or more of the operators, or other owners of interests in a particular field, that they own or possess the exclusive or correlative rights with others to take from a common reservoir, and it is alleged that another, not entitled to take from such common reservoir, has taken therefrom; or, if such other be entitled to take, that he has exceeded his production allowable (overproduced) under the field rules applicable to such reservoir; such is sufficient, in our opinion, to state a cause of action against the one so taking, and to require a trial of the

issues on the merits." Id., 361 S.W. 2d at 945.

To summarize, I believe that to entertain this action would not be an intrusion into the system of proration or any other matters within the exclusive province of the Railroad Commission. Although the responsibility for the evolution of formulas to effect a fair allotment between private interest with due regard for the public interest lies in the Commission, see Railroad Commission v. Rowan & Nichols Oil Co., supra, 310 U.S. at 580, 60 S.Ct. 1021, 84 L.Ed. 1368, the remedy for those injured by production in violation of those formulas is in the courts.

I therefore respectfully dissent.

Rehearing denied; Tuttle, J., dissents.