AMERICAN TRADING AND PRODUCTION CORPORATION et al., Appellants,

v.

PHILLIPS PETROLEUM COMPANY et al., Appellees.

No. 6004.

Court of Civil Appeals of Texas, El Paso.

Dec. 31, 1969.

Rehearing Denied Feb. 4, 1970.

Garland Casebier, Frank C. Ashby, Midland, John S. McDaniel, Jr., Baltimore, Md., Cable, McDaniel, Bowie & Bond, Baltimore, Md., of counsel, for appellant.

W. B. Browder, Jr., Midland, Carl Jones, Asst. Gen. Atty., William Zeman, Loyd G. Minter, Bartlesville, Okl., Joe V. Peacock, Chief Attorney, Gerald Fitz-Gerald, G. G. Hazel, Raymond A. Lynch, Midland, for appellees.

OPINION

FRASER, Chief Justice.

The statement of nature and result of the case is substantially set forth in appellants' brief and appears to be reasonably satisfactory to the various appellees. This statement and nature of the case by appellants is substantially as follows:

The immediate suit grew out of a Rule 37 case, wherein appellant American Trading and Production Corporation (sometimes referred to as American Trading or simply as ATAPCO) obtained a permit to drill a well on a 160-acre tract in the Azalea Field, Midland County, Texas (the field rules provided for 640-acre spacing) as an exception to the field rules. The Railroad Commission had declined to issue the permit and appellees therefore appealed to the District Court of Travis County, which court issued its mandatory injunction ordering the Railroad Commission to issue the said permit. From this decision and order by the Travis County court, the Railroad Commission immediately appealed. The District Court judgment commanding the Railroad Commission to issue such a permit was rendered on September 24, 1958. The Commission, Phillips, Baxter et al., and O'Neill, et al. gave notice of appeal at tht time and the appeal was perfected on October 1, 1958. Thereafter, on October 2, 1958, the Commission issued a permit to American Trading for the drilling of the well. During the interval, from the date of the trial court judgment to the date that such judgment was finally determined to have been erroneous, American Trading drilled a well on its land and produced gas and condensate under an allowable issued by the Railroad Commission which it sold to Phillips for the sum of $94,246.16.

Appellee Phillips filed the present suit ostensibly as a stakeholder, alleging that it had in its possession $94,246.16, representing the proceeds realized from the purchase and sale of the gas and condensate

produced by American Trading; but actually representing the amount which Phillips agreed to pay American Trading and the royalty owners for gas and condensate which Phillips had purchased from them; that American Trading had no right to produce this gas and condensate because the permit under which the well was drilled was subsequently revoked; that, therefore, American Trading et al. have no lawful claim to the proceeds; that all of the remaining lease owners in the field would have produced such gas and condensate but for the American Trading's unlawful conduct; and that, therefore, the proceeds should be awarded to the lease owners and royalty owners in the field other than the appellants.

Appellees O'Neill et al. and Baxter et al. filed pleadings essentially adopting the position of appellee Phillips.

Appellant American Trading filed exceptions to appellees' theory of recovery and alleged by way of cross-action that it made a contract with Phillips under which the gas and condensate were sold, and that it had made demands on Phillips for the proceeds, as well as for interest and attorneys' fees.

The royalty owners under American Trading's 160-acre tract adopted American Trading's exceptions and essentially its position, but in the alternative said that if American Trading was not entitled to the proceeds of the sale of gas and condensate from its lease, then the Group One Defendants were entitled to all of the proceeds by virtue of the fact that the gas and condensate were produced from their land.

The trial of the case was to a jury, which returned a verdict based on answers to special issues. The trial court, however, determined, as a matter of law, that appellants were not entitled to recover any portion of the proceeds and, based on some jury issue findings, distributed the fund among appellees, with interest.

The original dispute involving the Rule 37 question was decided by the Austin Court of Civil Appeals. (See 323 S.W.2d 474).

A subsequent appeal was perfected and disposed of by this court in an opinion found at 361 S.W.2d 942. (End of appellants' statement).

We feel, however, that the Phillips appellees have made some observations in their brief that should be included in the statement and nature of the case, and they are substantially as follows:

This court held in the previous appeal of this case (Cause No. 5536) that Phillips' petition stated a cause of action. Phillips Petroleum Company v. American Trading and Production Corporation, Tex.Civ.App., 361 S.W.2d 942 (1962), error refused, N. R.E. That opinion states the background of the case; summarizing the prior litigation, Railroad Commission of Texas v. American Trading and Production Corporation, 323 S.W.2d 474 (Tex.Civ.App. 1959, error ref., n. r. e., cert. den. 361 U.S. 886, 80 S.Ct. 158, 4 L.Ed.2d 121), where the Austin Court of Civil Appeals held that American Trading was not entitled to drill the well which precipitated the current suit; and gives the history of the drilling and production of the well by American Trading. The actual trial of this case confirmed the facts stated in the prior opinion.

Most of the facts have already been stipulated and the stipulation is in evidence. Appellees went to trial on the identical petition which had earlier been dismissed by the trial court and which this court held stated a cause of action. In the former appeal, this court ordered all of the exceptions to that petition contained in the answers involved in that appeal to be overruled. American Trading's answer involved in that appeal was its Third Amended Original Answer. It went to trial on its Fourth Amended Original Answer, but that answer adopted all of the exceptions of the Third and contained no additional exceptions or defenses directed at appellee except its plea for recovery for asserted

good faith improvements. Thus, the pleadings on which the trial was conducted and now before this court are identical in all material respects to those involved in the former appeal.

The appellants, in their brief, also state that on a previous appeal styled Phillips Petroleum Company v. American Trading and Production Corporation, 361 S.W.2d 942, this court had before it essentially the same pleadings as we find in the present transcript.

We feel that the chronology of events stated in the appellee's O'Neill brief should be included, and they are substantially as follows:

1. The Railroad Commission Order of August 28, 1953, being its state-wide density order;

2. The Railroad Commission Order of December 19, 1957, fixing field rules for the Azalea (Strawn) Gas Field;

3. The Application of American Trading for an exception to the Commission's rules, filed on May 6, 1958;

4. The Order of the Railroad Commission of August 1, 1958 denying American Trading's application;

5. The suit of American Trading contesting the order of the Railroad Commission, filed August 28, 1958, and the judgment of the District Court of Travis County, Texas of September 22, 1958, holding invalid the order of the Commission and directing issuance of the permit to American Trading;

6. Permit issued American Trading by the Railroad Commission on October 2, 1958, reciting "this permit issued pursuant to the order of the 53rd District Court, Travis County, Texas;

7. American Trading's well commenced on October 16, 1958 and completed on December 22, 1958;

8. The judgment of the Court of Civil Appeals at Austin of April 1, 1959, reversing the judgment of the District Court and affirming and recognizing the validity of the Commission's original order of August 1, 1958;

9. The issuance of the mandate of the Court of Civil Appeals on July 30, 1959, and filed in the District Court on July 31, 1959;

10. The American Trading's well shut down on July 31, 1959, after production of 224,572,000 cubic feet of gas and 26,713 barrels of condensate, of a value of $94,246.16;

11. The filing of this suit on August 11, 1959, and the deposit by Phillips with the Clerk of the Court of $78,323.97 on August 21, 1959, and $15,922.21 on October 7, 1959, for a total of $94,246.18;

12. The withdrawal by American Trading of $82,465.41 from the office of the District Clerk on April 18, 1961.

We should like to point out, as indicated in the Phillips brief, that most of the facts had already been stipulated and said stipulation was in evidence at the trial of this case. Also, appellees went to trial on the identical petition which this court, in the earlier case, held stated a cause of action (it will be remembered that this earlier case was unsuccessfully appealed by appellants to the Supreme Court and certiorari denied by the United States Supreme Court). In the former appeal, this court ordered all of the exceptions to that petition contained in the answers of the defendants to be overruled. American Trading's answer in this case is styled its Fourth Amended Original Answer, and adopted all of those matters to which the court had previously sustained exceptions, and contained no additional exceptions or defenses directed at appellees except its plea for recovery for asserted good faith improvements. Thus, the pleadings on which the trial was conducted, and now before this court, are identical in all material respects to those involved in the former appeal.

Appellants' first group of points consists of Points 1, 2, 3, 14, 15 and 16. The first point charges that the trial court committed error in holding, as a matter of law, that all of the funds in question should be awarded to appellees. The second point charges the court with error in rendering judgment in favor of appellees, because the well in question, called ATAPCO's No. 1 Heidelburg well, was drilled by virtue of a permit issued by the Railroad Commission in response to a trial court mandatory injunction which was not superseded by appellees. The third point charges the trial court with error in sustaining plaintiffs' motion for judgment notwithstanding the jury's verdict. In Appellants' 14th point, appellants charge the court with error in granting the entire fund to appellees, contrary to the jury's verdict, and that the trial court erred in disregarding the jury's answer to Special Issue No. 4. Appellants' 15th and 16th points charge the court with error in disregarding the jury's answers to Special Issues 7 and 8.

We believe these points should all be overruled for the following reasons.

■ We believe the opinion of this court on the first appeal to be the law of the case wherein that decision, heretofore cited in the statement and nature of the case, held that appellees had stated a cause of action, and it is elementary that if a petition states a cause of action and the material allegations thereof are subsequently proved, either by undisputed evidence or a jury verdict, then the plaintiff is entitled to judgment. As stated before, a comparison of the petition and the stipulation entered into between the parties, and in evidence, shows them to be almost identical, and we feel, from an examination of the record, that the matters of fact pleaded in the petition and not covered by the stipulation were established by competent evidence.

■ We think the first point must be overruled because the fund was awarded to legal well and royalty owners, and appellants cannot complain because it has been established without contradiction that they drilled an illegal well, and the funds in controversy herein represent the proceeds from such well. Having had no right whatever to drill such well, the appellants cannot now complain of the disposition of the proceeds from said well.

■ With regard to appellants' second point, although the said well was drilled by virtue of a permit issued by the Railroad Commission in response to a trial court mandatory injunction, said permit and said injunction were superseded by the appeal of the Railroad Commission and the holding by the higher courts that appellants were not entitled to any permit, and the judgment of the trial court was therefore in all things reversed, including the injunction which had been issued.

We find that appellants' third point does not present error, as examination of the record shows that the court was, in our opinion, correct in its action in sustaining plaintiff's motion for judgment notwithstanding the jury's verdict.

Appellants' fourteenth point, we think, must be overruled as we believe the court acted correctly in disregarding the jury's answer to Special Issue No. 4. We will discuss the preceding points more fully later on in this opinion.

■ Appellants' 15th and 16th points deal with the question of appellants' good faith in drilling the well in question. We think the court acted correctly in overruling the jury's affirmative answers thereto, because the Railroad Commission had appealed the decision of the trial court in Austin, ordering it to issue the permit, and the well in question was drilled during the pendency of this appeal. The appeal resulted unfavorably to appellants, and therefore they cannot be heard to say that they were drilling in good faith, when they knew the appeal was in progress and were contesting it, and knew that it might result in the withdrawal of the permit and the cancellation of the injunction. In other words, they took a calculated risk and lost.

Therefore the trial court was correct in disregarding the jury's affirmative answers to Issues 7 and 8 which held, in effect, that appellants acted in good faith in drilling the said well.

We will now pass to a general discussion of the preceding points and matters relative thereto. Relative to the court's action in disregarding the jury's answers to Issue No. 4, which was that the legal wells would have produced, in addition to the regular production, 8,000 additional barrels of condensate if the American Trading well had not produced 26,713 barrels of condensate, the following observations must be made. There was expert testimony produced by appellees that during the period in question while the well was in production, the Railroad Commission would have increased the allowables of appellees' wells to satisfy the demand for gas, and that appellees would have lawfully produced and sold a volume of gas and condensate equivalent to all that produced by the American Trading well, and that such would have occurred during those seven months while the illegal well was in production if said illegal well had not been drilled. Appellants' testimony was that because of retrograde condensation, 18,713 barrels would not have been produced until 1975 or 1977. Therefore, it is clear that all expert witnesses testified that the legal wells would have produced the 26,713 barrels of condensate, their only difference being a matter of time. Appellees' witness, Smith, qualified as a natural gas engineer experienced in the manner in which gas allowables are established and administered. He testified that Azalea Strawn Gas Field, like other known non-associated gas fields, is pro-rated on the basis of gas allowables; the condensate, or liquid hydrocarbons, comes along with the gas and is not pro-rated. In other words, it is the demand for gas and the gas which determines the condensate production. He further testified that Phillips Petroleum Company was the only purchaser of gas in this field and therefore filed the only gas nominations for the field and was the only purchaser of

the condensate produced with the gas. He also testified that the Railroad Commission establishes gas allowables for a given calendar month on the basis of purchasers' nominations and producers' forecasts for that month, the nomination being the volume of gas a purchaser desires to take, and the forecast being the volume of gas the producer expects to produce and sell for that month. Taking these facts into consideration, the Railroad Commission then arrives at what it calls the "reasonable market demand" for the gas from that field, which is established as the allowable for the field for that month. The field allowable is then distributed among the individual wells in the field by first allowing "limited capacity wells" to produce at their maximum capacity, and then dividing the rest of the field allowable among the "capable" wells according to the pro-ration formula established by the special field rules for that particular field. This means that only the capable wells will be assigned a greater allowable if the demand from that field increases or if the demand remains the same and there are fewer producing wells. This was the method in operation during the time element involved here, to-wit, the entire time the American Trading well was in production. The said expert further testified that Phillips Petroleum Company was the only purchaser of gas in this field and therefore filed the only gas nominations for the field and was, accordingly, the only purchaser of the condensate produced with the gas. He further testified that the Phillips Gasoline Plant needed, and there was a demand for, all of the gas which could be produced from this field during the period January through August, 1959, which is substantially the period that the American Trading well was in production. He also testified that if the American Trading well had not been drilled and producing, the demand for gas from the field would have been the same, and the nominations would have been the same. He alleges that the Railroad Commission, following its established and customary procedure, would have established the same

field allowable and would have reassigned the gas allowable, which the American Trading well received and produced, to the other wells in the field which were capable of producing more than their then-assigned allowables. This expert, Mr. Smith, further testified that the Phillips plant never did receive the volume of gas it wanted during this period of time, and that there was also a demand and market for all the condensate which could have been produced with the gas from this field.

Mr. Smith's conclusion, therefore, was that the American Trading well took part of the market for gas and condensate from this field which would have and could have been filled by legal wells in the field if the American well had not been drilled, and that a market existed and would have been filled by the other wells in the field during the time the American Trading well was in production.

Appellee also produced a witness named Cecil R. Clements, who qualified as a petroleum engineer and whose present primary duty was forecasting gas well production, and who had knowledge of the manner in which the Railroad Commission assigns allowables among individual wells in the gas field. Mr. Clements confirmed the other expert, Mr. Smith, in the conclusion that the same market demand would have existed, and the allowable of the American Trading well would have been re-assigned to other wells in the field if the American Trading well had not been drilled. Mr. Clements identified appellees' Exhibit 16, which shows the only four wells in the field which were capable of producing more gas and which would have produced and sold the gas allowable of the American Trading well if such well had not been drilled, and the portion which would have been produced by each of the four legal wells. Mr. Clements also identified appellees' Exhibit 17 and explained such exhibit in order to show that a volume of condensate equivalent to that produced by the American Trading well would have been recovered by these four legal wells, and the portion which would have been recovered by each

of said legal wells. In view of the fact that the jury answered Special Issues 5 and 6 consistent with said data shown on Exhibit 17, but answered that only 8,000 barrels of the 26,713 barrels of condensate would have been produced and sold by these four other wells, it is clear why the judge disregarded this jury finding in view of the testimony, especially since new production tests could have been filed with the Railroad Commission to establish their additional capacities over and above their existing allowables.

A Mr. Sipes, expert witness for the appellants, testified that the other 18,713 barrels of the condensate which was produced and sold by American would have been lost in the ground and not recovered by anyone if the illegal well had not been drilled. We do not believe Mr. Sipes' testimony supports this conclusion, in view of the fact that Phillips needed and wanted more gas, and the legal capacity wells could likely have gotten new and higher allowables, it appearing that this condensate would have been produced by the legal wells by virtue of their increased allowables. Again we say it is clear why the trial judge disregarded the jury's finding in answer to Special Issue No. 4.

Further discussing the aforesaid points, it must be pointed out that there is no question and no controversy as to the fact that the appellants did illegally drill the well in question and market the products therefrom. Therefore, it is elementary that they would not be entitled to retain any of the fruits of the illegal drilling and production. Bearing in mind that the illegality of the well has been firmly and finally established by the courts, we fail to see why and how and under what conditions the appellants would be entitled to have any say in the profits or production from the said illegal well. Appellants cite the case of Waddell v. Empire Drilling Co., 358 S.W.2d 221 (Tex.Civ.App.1962), but we do not believe this case has any bearing on the matter before us, as in the Waddell case the parties and cases were different, and the first case did not purport

to adjudicate the value of the water, leaving such question as an open question in the second case. Such is not the situation here. The only point for decision on the first appeal of the case before us was whether a cause of action existed if the facts alleged were true. The first appeal of this case held that the petition stated a good cause of action, and the case is now before this court on appeal from a trial on the merits. We are of the opinion that the record established that the identical facts theretofore alleged have been satisfactorily proved, point by point. It is elementary that when a petition states a cause of action, it means that the plaintiff is entitled to judgment if he subsequently proves the facts pleaded. We feel that the facts pleaded and established here were adequate. Navarro Oil Co. v. Cross, 145 Tex. 562, 200 S.W.2d 616. It must be remembered, too, that with regard to the prior appeal the Supreme Court refused writ of error and, as a court of civil appeals, we are under a duty to follow the decision previously rendered where the Supreme Court has denied a writ of error as to the prior decision. This, in effect, in our opinion established the law of the case; but if we are incorrect in so stating, there can be no doubt that the appellants drilled an illegal well and are not entitled to any of the fruits of said illegal production. It is as simple as that. It follows naturally, too, that appellants can have no say in the disposition of the production of the illegal well, nor are they entitled to the cost of drilling said well.

This court recently held that violations of a Railroad Commission order gives rise to a private cause of action. Zimmerman v. Texaco Inc., Tex.Civ.App., 409 S.W.2d 607 (1966), err. ref., n. r. e., 413 S.W.2d 387.

Referring again to the testimony of appellants' witness, Mr. Sipes, it is obvious that he was talking about what he called retrograde condensation occurring "during the remaining life of the field" and between "now and 1975 or 1977". His testimony is long and complicated, and we will not discuss it in its entirety other than to say that he failed to consider what two of the four legal wells were capable of doing in the period of time while the American Trading well was in production, and he also failed to contradict the testimony of appellees' witnesses that of the amount of condensate, to-wit, 26,713 barrels produced by the American Trading well, 18,713 could have and would have been recovered by any other well or wells in the field. Mr. Sipes does admit that communication between the five wells under discussion was similar to that prevailing in the remainder of the reservoir and that, in fact, given sufficient time, one well would possibly drain the whole reservoir because the area drained by a well is radial. So the other four legal and capable wells would therefore have taken their increased production from the entire field. The answer to Special Issue No. 4 accordingly has no support in the evidence, and the trial court properly disregarded it. We cannot accept appellants' argument that they were entitled to the unlawfully produced condensate or the proceeds thereof, because nobody else would have produced it. Such is not sufficient to oust this appellee from its lawful possession of the money for same for itself and those who were similarly damaged by appellants. We believe appellees have established a better right to the entire fund and are the only other parties who are legally asserting claim to the same. It is obvious that this appellee had possession and lawful custody of the fund until it was deposited into court and was, therefore, the last rightful possessor of same. Appellants cannot recover on any alleged theory that some of the condensate would not have been produced had not the American Trading well been drilled. They must recover on the strength of their own right, and it has been repeatedly established here that they had no right to any of the production, gas condensate or otherwise, of the well that they illegally drilled and produced.

Appellants' fourth and fifth points are as follows:

## "FOURTH POINT

"The trial court erred in overruling paragraph I. A. of American Trading and Production Corporation's motion for judgment notwithstanding the jury's verdict wherein ATAPCO states grounds for a recovery of the total fund, for the reason that the undisputed facts reflect that the gas and condensate in question were produced under the protection of a trial court's judgment sanctioning the operation.

## "FIFTH POINT

"The trial court erred in overruling paragraph numbered V of ATAPCO et al's motion for new trial, wherein appellants urge that the court should have granted them a total recovery of the fund, as ATAPCO produced the gas and condensate under a permit issued pursuant to a mandatory injunction."

We do not find that these points present error because, as heretofore pointed out, the well was drilled and the products produced while the matter of the legality of the drilling and production was on appeal by the Railroad Commission. Appellants certainly knew that the case was on appeal and certainly must have considered the possibility that the Railroad Commission's appeal might be successful, thereby destroying ATAPCO's permit to drill and reversing the lower court's judgment ordering the issuance of such permit. Therefore, they cannot now say that they have a right to something that they took and did before the matter was fully decided; and here it was decided decisively against them, and they are left in the position of having drilled an illegal well and produced gas and condensate therefrom in violation of the Railroad Commission's regulations and are not entitled to any protection therefor. Foree v. Crown Central Petroleum Corporation, 431 S.W.2d 312 (Tex.Sup.Ct., 1968). We feel, therefore, that these points should be overruled.

Appellants' 6th and 7th points argue that there was no evidence to support a negative answer to Special Issue No. 11, and that therefore the court should have disregarded the answer thereto and that the trial court erred in failing to disregard the jury's answer to Special Issue 11 because the jury's answer thereto was against the great weight and preponderance of the evidence. The said issue inquired of the jury whether it found, from a preponderance of the evidence, that the Railroad Commission by its conduct in issuing the permit to American Trading and Production Corporation to drill the Heidelburg No. 1 well, waived its (Railroad Commission's) right to supersede the Travis County District Court judgment. We find no merit in this point, as the Railroad Commission issued the permit because ordered to do so by mandatory injunction issuing from the said Austin trial court. Thereafter, the said Railroad Commission perfected its appeal and the appellate courts reversed the said Austin trial court. Certainly, when the Railroad Commission initiated and perfected its appeal, it contradicted any assertion or assumption that it was waiving its right to supersede the Travis County District Court injunction. These statements apply to all of the appellees, as well as the Railroad Commission, because their future depended upon the success or failure of the Railroad Commission's appeal. There was no evidence from the Railroad Commission, verbal or documentary, except the permit it was required to issue by the Travis County District Court. So, summing it up, the facts reveal that the Railroad Commission did all it could do and was successful in so doing. Its successful appeal denies the existence of any evidence to the contrary and contradicts the assertion that the answer to said Issue 11 was against the great weight and preponderance of the evidence. These points are therefore overruled.

Appellants' 9th, 10th and 11th points charge that the trial court erred in failing to award appellants judgment based on the jury's answer to Special Issue No. 4 (this is the issue wherein the jury found that the

appellees would have produced 8,000 barrels more of condensate than they actually produced had it not been for the ATAPCO well); and that the trial court erred in disregarding the jury's answer to Special Issue No. 4 because said issue was supported by competent evidence; and that the trial court erred in overruling Paragraph No. 2, Ground for Recovery, under the jury's verdict, of ATAPCO's motion for judgment based on the jury's verdict. Appellants' tenth point makes the assertion that the court erred in disregarding the jury's answer to Special Issue No. 4 because said issue was supported by competent evidence and the jury's answer thereto reflects that appellees' wells would not have produced the 18,713 barrels of condensate for which the court awarded appellees damages. It cannot be said that the drilling of the well on appellants' own land, and producing gas and condensate therefrom on a radial basis, could in any way enhance the value of appellees' property or wells. The opposite would be true. This matter again depends upon the question of good faith, which we have held, and do hold, did not exist when ATAPCO drilled the well. It is not clear how anyone could spend almost $300,000 in good faith when the entire matter was being vigorously prosecuted in the courts and, as it happened, turned out adversely to ATAPCO. Therefore, we do not believe ATAPCO was on sound ground in seeking to recover the cost of drilling the well, the lifting of the products therefrom and the products so produced. We feel that these matters have been thoroughly discussed earlier in this opinion, wherein we set forth the testimony of experts, and we therefore feel that the trial judge was entirely correct in the rulings on the three points just set forth. We believe, from the evidence, that the action of the appellants in obtaining an injunction which was later proven to be erroneous, and their wrongful action therein, deprived appellees of the right to produce a volume of gas and condensate equivalent to that illegally produced from appellants' well. This matter of whether the legal wells would

have produced an equivalent of the illegal production of the illegal well was thoroughly gone into by experts, and we think the court was well within its power and acted correctly in disregarding Issue No. 4. These three points are therefore overruled.

■ Appellants' 12th and 13th points claim that the court erred in awarding judgment in favor of appellees against appellants for six per cent interest on the sums of money recovered from the date each appellant withdrew such sum of money from the registry of the court and appropriated such money to its own use. Appellants urge in their 13th point that the court erred in overruling paragraph I.B. of appellants' motion for judgment, wherein it is urged that in addition to the $94,246.16, American Trading is entitled to recover interest from the date alleged in its cross-action. We find no merit in these points because the trial court properly awarded interest to appellees in the sums of money awarded to them from the date appellants appropriated and used the money, and further, that American Trading would not have been entitled to interest if it had recovered anything, this because its whole operation was illegal. We repeat that American withdrew its purported share of the fund on April 18, 1961, and has thereafter appropriated same to its own use and continues to hold said sum of money. This puts them in the position of asking for interest on money they are already using. Further, it must be pointed out that the court could not award interest to appellants because appellants recovered nothing under the judgment. It is shown in the record that appellant Phillips Petroleum Company deposited the entire fund into court in two payments, one in August, 1959, and one in October, 1959. All of these appellants withdrew the money awarded to them by the trial court's first judgment, which was later reversed on various dates. Appellant American Trading withdrew the sum of $82,465.41 on April 18, 1961. After the reversal of the trial court's first judgment, none of the appellants returned any of the

money into the registry of the court, but have held and used it and continue to do so until the present time. Even in the face of these facts, if appellants had been entitled to any of the fund, they certainly would not be entitled to interest after they withdrew such funds from the registry of the court; but this is what they are asking. We have examined the cases presented by appellants, but do not believe they are in point. Appellants' Points 12 and 13 are accordingly overruled.

Appellants, in their eighth point, claim that the court erred in disregarding the jury's answer to Special Issue No. 8, which inquired if American Trading and Production Corporation acted in good faith when it produced the gas and the condensate from the Heidelburg Well No. 1. In its 15th point, appellants argue that the court erred in granting judgment to appellees for the total fund, contrary to the jury's answer to Issue No. 7, which inquired if the appellants acted in good faith when they drilled the well. We have discussed these matters before and have repeatedly pointed out that the Railroad Commission had the matter up on appeal, and either side must have known, or should have known, that the decision might go against them. Therefore, in our opinion, the investment of all this money in drilling a well and then taking the products therefrom was, as we have said before, a calculated risk because appellants did so knowing that if the appeal of the Railroad Commission were granted, they would have had no right to drill or produce the well. Under these circumstances we cannot and do not hold that good faith existed, but, on the contrary, hold that the trial court acted correctly in disregarding the jury's answers to said issues. It seems elementary to us that entire good faith would have dictated that the proper course would have been to wait until the controversy had been finally determined before expending large sums of money in drilling. These points are accordingly overruled.

Appellants' 16th point again argues that the trial court erred in disregarding the jury's answer to Special Issue No. 8, which we have just discussed. We feel no further discussion is necessary, and this point is therefore overruled.

Appellants' Points 17 and 18, grouped with 15, 16 and 8, maintain that because the jury found that American Trading acted in good faith in drilling and producing the well in question, which finding the court disregarded, it ought to be allowed its cost incurred in drilling the well ($282,009.36) and lifting the gas and condensate in question (which the jury found to be $4,262.-33). We find no merit in these points, as American Trading drilled the well on its own land, which it still has, and this entire litigation has been over the fact that the well damaged the appellees. This, because appellees already had wells on their property under the pro-ration regulations which would have recovered all of the gas and condensate to which they were entitled, and so there was no way that American Trading could present evidence of any benefit to or enhancement of appellees' property. On the contrary, it is appellees seeking to recover that which ATAPCO wrongfully removed from the ground. Also, to recover for enhancement, it has been held that the cost of drilling is not necessarily the value of the improvement. To get the benefit of this allowance, the trespasser must plead and prove his good faith; and here, it could not do so. These points are overruled.

We have not commented on or discussed the brief of Joseph I. O'Neill, Jr., et al., as they have agreed to and adopted the reply points of the appellee Phillips Petroleum Company—as follows: "These O'Neill appellees agree with and adopt the Reply Points of the appellee Phillips Petroleum Company. These points are copied and included here."

All of appellants' points are overruled, and the judgment of the trial court is in all things affirmed.