NO. 07-04-0102-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 30, 2004

______________________________

THE STATE OF TEXAS, 

Appellant

v.

SANG MINH DOAN, 

Appellee

_________________________________

FROM THE COUNTY COURT OF LAW NO. 2 OF POTTER COUNTY;

NO. 101,195; HON. PAMELA SIRMON, PRESIDING

_______________________________

Before JOHNSON C.J., and QUINN and CAMPBELL, JJ.

In this interlocutory appeal, the State claims error on the part of the trial court in granting Sang Minh Doan’s motion to suppress blood test results sought to be used as evidence.  Doan had been charged with driving while intoxicated.  Two issues are before us, and they involve the relevance of the evidence and whether Doan was under arrest at the time the blood specimen was obtained.  We affirm the judgment of the trial court. 

Background

On May 20, 2002, an officer was dispatched at 2:30 a.m. to a single vehicle wreck.  Upon his arrival, he observed a vehicle on its roof.  The driver, identified as Doan, was extracted by rescue personnel and transported to Northwest Texas Hospital.  The officer was not able to interview Doan at the scene but was able to speak with him approximately an hour later at the hospital. As the officer spoke to him, he observed the odor of alcohol on Doan’s breath and person.  Since Doan was on a backboard with a cervical collar, the officer was unable to perform any field sobriety tests.  However, due to the nature of the accident and the fact he smelled alcohol, the officer allegedly formed a belief that Doan “possibly was intoxicated,” purportedly asked him to consent to a blood test, and purportedly read to Doan a statutory warning form referred to as “DIC-24."  The form, a copy of which was admitted into evidence, reads in part:  “You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle . . . in a public place while intoxicated . . . ."  The officer also testified that Doan verbally consented to giving the sample.  

Though the officer further stated that he intended to arrest Doan when released from the hospital, his supervisor told him to wait and that an arrest warrant would be issued for him later.  However, in the officer’s opinion, appellee “was not free to leave the hospital until I was instructed to not arrest him by my supervisor.”

Doan filed a motion to suppress alleging that 1) the blood test did not indicate what his blood alcohol concentration level was at the time he was operating his motor vehicle, and 2) he was not under arrest when the sample was requested and, thus, no sample could have been legally obtained from him.  After a hearing, the trial court granted the motion without entering any written findings of fact or conclusions of law.
(footnote: 1)
Issue Two -- Arrest

In its second issue, the State argues that appellee was under arrest at the time the blood test was requested and, therefore, Doan had impliedly consented to the test.  In view of this, the trial court allegedly erred in granting the motion to suppress.  We overrule the issue.

We review a trial court’s ruling on a motion to suppress under the standard announced in 
Guzman v. State, 
955 S.W.2d 85 (Tex. Crim. App. 1997).  In doing so, we give almost total deference to the trial court’s finding of historical fact and review 
de novo  
its application of the law to the facts.  
Id. 
at 89.

Statute permits an officer to obtain a sample of appellee’s blood if he was under arrest when the sampling occurred.  
Tex. Transp. Code Ann. 
§724.011(a) (Vernon 1999).  Both parties agree that the issue before us is whether appellee was under arrest at that time.  

A person is arrested when he has been actually placed under restraint or taken into custody by an officer or a person executing a warrant of arrest or by an officer arresting without a warrant.  
Tex. Code Crim. Proc. Ann. 
art. 15.22 (Vernon 1977).  An arrest occurs at the moment a person’s liberty of movement is restricted or restrained.  
Hoag v. State, 
728 S.W.2d 375, 379 (Tex. Crim. App. 1987).  The taking of blood is a search and seizure.  
Aliff v. State, 
627 S.W.2d 166, 168 (Tex. Crim. App. 1982).  A person is seized when, in view of all the circumstances, a reasonable person would believe that he is not free to leave.  
State v. Williams, 
814 S.W.2d 256, 259 (Tex. App.–Austin 1991), 
aff’d, 
832 S.W.2d 52 (Tex. Crim. App. 1992).  An officer’s opinion that a person has been arrested is one factor to be considered.  
Hoag v. State, 
728 S.W.2d at 378-79.     

The officer who allegedly spoke with Doan at the hospital was the only witness at the suppression hearing.  As noted above, he purported to read the statutory warning which informed appellee he was under arrest and also stated that Doan was not free to leave at the time the test was conducted.  It was only later that his supervisor allegedly informed him that Doan would be arrested by warrant issued later.  This was evidence that would permit a reasonable person in Doan’s position to believe he was not free to leave and, therefore, under arrest.  
See Garcia v. 
State, No. 07-99-210-CR (Tex. App.–Amarillo June 2, 2000, pet. ref’d) (unpublished) (recognizing that the reading of a DIC-24 form to the suspect was an indicia illustrating that the suspect was under arrest); 
Nottingham v. State, 
908 S.W.2d 585, 588 (Tex. App.–Austin 1995, no pet.) (holding that the defendant was arrested at the time the officer told her pursuant to the DIC-24 warnings she was under arrest because a reasonable person in her position would believe she was not free to leave); 
Bell v. State, 
881 S.W.2d 794, 799-80 (Tex. App.–Houston [14
th
 Dist.] 1994, pet. ref’d) (holding there was some evidence that defendant was under arrest when the DIC-24 warnings were read to him).
(footnote: 2) 

  Nevertheless, we are unable to hold that the trial court abused its discretion in granting the motion to suppress.  As disclosed by comments made at the suppression hearing, the trial court questioned whether or not appellee was under arrest and whether the implied consent encompassed by the statute arose only upon arrest.  Moreover, 
the Court of Criminal Appeals has stated that the factfinder, 
i.e.
 the trial court here, may reject the officer’s testimony about what occurred and what was said, even if uncontested.  
Ross v. State, 
32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000).  

In the absence of written findings of fact by the trial court, the general rule is that a reviewing court cannot hold that the trial court abused its discretion by granting a motion to suppress.  
State v. Guo
, 64 S.W.3d 662, 666-67 (Tex. App.–Houston [1
st
 Dist.] 2001, no pet.).  So, given this, the standard of review, and the trial court’s authority to reject the only testimony purporting to illustrate that appellee was under arrest, we cannot say that its decision was an abuse of discretion.  

Having overruled issue two, we need not decide issue one.  If the evidence was improperly obtained, then it does not matter whether it would be relevant.  Accordingly, the judgment of the trial court is affirmed.

Brian Quinn

    Justice  
 

Do not publish. 

åßÑvalidity of the contracts.  The trial court granted Kan-Pak’s summary judgment, denied Verizon’s summary judgment, and awarded Kan-Pak $97,464, attorney fees of $8,000, court costs, and post-judgment interest at the rate of 8.25 percent per annum.  

Following entry of summary judgment, Verizon filed a motion for new trial challenging the amount of the award of actual damages assessed by the trial court as well as whether Kan-Pak had established ratification or estoppel as a matter of law.  As it relates to the amount of damages awarded, Verizon contends that the award was improper as a matter of law because future payments under the rental contracts were not discounted to present value.  The trial court denied Verizon’s motion.

On appeal, Verizon presents two issues.  By its first issue, Verizon contends that the trial court erred in granting summary judgment in favor of Kan-Pak and in failing to grant summary judgment in favor of Verizon.  By its second issue, Verizon contends that the trial court erred in denying Verizon’s motion for new trial because Kan-Pak’s evidence is legally insufficient to support the award of actual damages in the summary judgment.

Summary Judgment

Verizon contends that the trial court erred in granting Kan-Pak’s motion for summary judgment and in denying Verizon’s motion for summary judgment.  Specifically, Verizon contends that the evidence raised a genuine issue of material fact as to each of the grounds upon which Kan-Pak sought summary judgment: ratification and equitable estoppel.  Furthermore, Verizon contends that it is entitled to summary judgment because it established, as a matter of law, that the rental contracts were not binding on Verizon and, therefore, there was no enforceable contract upon which Kan-Pak could assert its breach of contract action.

When both parties to a suit move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law.  
City of Garland v. Dallas Morning News
, 22 S.W.3d 351, 356 (Tex. 2000).  When the trial court grants one party summary judgment and denies the other, we review both parties’ summary judgment evidence, determine all questions presented, and render the judgment the trial judge should have rendered.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872 (Tex. 2000).  
When the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed on any meritorious ground expressly presented in the motion and which is preserved for appellate review.  
State Farm Fire & Cas. Co. v. S.S.
, 858 S.W.2d 374, 380 (Tex. 1993).

Verizon moved for summary judgment on both traditional and no-evidence grounds, while Kan-Pak’s motion asserted only traditional summary judgment grounds.  
See
 
Tex. R. Civ. P.
166a.  We review a summary judgment 
de novo
 to determine whether the movant has established its right to summary judgment as a matter of law.  
See
 
Dallas Cent. Appraisal Dist. v. Cunningham
, 161 S.W.3d 293, 295 (Tex.App.–Dallas 2005, no pet.).  In reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
See
 
City of Keller v. Wilson
, 168 S.W.3d 802, 824-25 (Tex. 2005). 

Enforceability of the Rental Contracts

Verizon contends that it is entitled to summary judgment because it established, as a matter of law, that GLM had no authority to enter into contracts on Verizon’s behalf and, therefore, the rental contracts are not enforceable against Verizon.
(footnote: 2)  

An agent cannot bind a principal unless the agent has actual or apparent authority to do so.  
See
 
Lifshutz v. Lifshutz
, 199 S.W.3d 9, 22 (Tex.App.–San Antonio 2006, pet. denied).  Actual authority arises when the principal intentionally confers authority upon the agent or intentionally or by want of ordinary care allows the agent to believe he has authority.  
See
 
id
.  Apparent authority exists when the principal’s acts would lead a reasonably prudent person to believe that the agent had authority to act on behalf of the principal, the principal has either affirmatively held out the agent as possessing authority or knowingly and voluntarily permitted the agent to act in an unauthorized manner, and the party relying on the agent’s apparent authority must have ascertained the fact and scope of the agent’s authority.  
See
 
Tex. Cityview Care Ctr., L.P. v. Fryer
, 227 S.W.3d 345, 353 (Tex.App.–Fort Worth 2007, pet. dism’d by agr.).  Only the actions of the principal can give rise to apparent authority; actions or representations of the agent have no effect on the determination.  
See
 
id
.  Under either theory, the party alleging agency has the burden to prove its existence.  
Id
. at 352. 

In the present case, there is no evidence in the record that would raise a fact issue as to whether GLM had actual authority to contract on behalf of Verizon.  The only evidence relating to the actual authority that Verizon intentionally conferred on GLM is the Waste Removal and Recycling Consultant Agreement between Verizon and GLM and a letter of authorization that Verizon gave to GLM to present to potential vendors.  Each of these documents expressly provide that GLM was not authorized to enter into any agreement or contract for services.  Because this right was expressly denied GLM, we cannot conclude that Verizon intentionally conferred authority to contract to GLM, intentionally allowed GLM to believe that it had authority to contract on behalf of Verizon, or that Verizon failed to exercise the degree of care necessary to prevent GLM from believing that it had authority to contract on behalf of GLM.  Thus, we agree with Verizon’s summary judgment contention that it established, as a matter of law, that GLM did not have actual authority to contract on Verizon’s behalf and, thus, Kan-Pak’s breach of contract claims cannot be founded on the basis of GLM’s actual authority to enter into the rental contracts on Verizon’s behalf.

As to GLM’s apparent authority, we are constrained to review only the evidence of the actions of Verizon in determining whether Kan-Pak could reasonably believe that GLM had authority to enter into the rental contracts on behalf of Verizon.  
See
 
id
. at 353.  The evidence of Verizon’s actions as it relates to whether they would lead a reasonably prudent person to believe that GLM was acting on Verizon’s behalf is the letter of authorization that specifically defines the scope of GLM’s agency and expressly prohibits GLM from contracting on Verizon’s behalf.  There is no evidence that Verizon held GLM out as having authority to contract on its behalf.  Most significantly, however, is that there is no evidence that Kan-Pak ascertained the fact and scope of GLM’s authority, which is a required element of a claim of apparent authority.  
See
 
id
.  Kan-Pak was notified, by the letter of authorization, that GLM did not have authority to bind Verizon to a contract and, further, there is no evidence that Kan-Pak took any action to ascertain that GLM had been granted greater authority than what was expressly identified in the letter of authorization.  Because there is no evidence to support one or more elements of a claim that Verizon is bound by the rental contracts because GLM had apparent authority to contract on behalf of Verizon, Kan-Pak’s breach of contract claims may not rest on the apparent authority of GLM to enter into the rental contracts on behalf of Verizon.

Ratification

However, even though Verizon is not bound by the rental contracts based on the actual or apparent authority of GLM to contract on Verizon’s behalf, Verizon would still be bound by the contracts if it acted in a manner that ratified these contracts.  In its motion for summary judgment, Kan-Pak contends that Verizon ratified the rental contracts by directly making 156 monthly payments under the rental contracts over the course of five to seven years.  Kan-Pak further cites evidence that GLM paid another 148 monthly payments.  By its summary judgment motion, Verizon contends that its actions were insufficient as a matter of law to ratify the rental contracts and that it could not have ratified the rental contracts before December 2006 because it was not aware of the material terms of the contracts.  Remaining mindful that this issue is presented in the context of competing motions for summary judgment, we are required to examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
See
 
City of Keller
, 168 S.W.3d at 824-25.

Ratification of a contract occurs when a party recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively acknowledging the contract.  
Stable Energy, L.P. v. Newberry
, 999 S.W.2d 538, 547 (Tex.App.–Austin 1999, pet. denied).  However, a party can only ratify a contract if, at the time of ratification, it knew all of the material terms of the contract.  
See
 
T & R Assocs., Inc. v. City of Amarillo
, 688 S.W.2d 622, 630 (Tex.App.–Amarillo 1985, writ ref’d n.r.e.).  Thus, if a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract.  
See
 
Spellman v. Am. Universal Inv. Co.
, 687 S.W.2d 27, 29-30 (Tex.App.–Corpus Christi 1984, writ ref’d n.r.e.).  Any retention of the beneficial part of the transaction affirms the contract and bars rescission as a matter of law.  
Id
. at 30.

Kan-Pak contends that Verizon’s direct payment of 156 monthly payments on three of the five contracts over the course of five to seven years coupled with GLM’s payment of 148 monthly payments on the remaining contracts is sufficient evidence to establish that Verizon ratified the rental contracts as a matter of law.  However, there is no direct evidence that, prior to December 2006, Verizon had any knowledge of all of the material terms of the rental contracts.  Certainly, there is no direct evidence that Verizon made those payments with knowledge that the terms of the rental contracts included a 60 month term that would be automatically renewed for an additional 60 month term if not terminated in writing within 60 days of the expiration of the initial 60 month term.  For Verizon to have ratified the rental contracts, it would have to be shown that Verizon had knowledge of the material terms of the contract at the time that it performed under the contract.  Because, prior to December 2006, there is no direct evidence that Verizon knew the material terms of the rental contracts that it was performing under, we cannot conclude that Verizon ratified the rental contracts as a matter of law by paying the monthly rental payments.
(footnote: 3)
 However, the evidence does establish that Verizon received copies of the rental contracts in December 2006.  Verizon made no direct monthly rental payments under the rental contracts after it received copies of the rental contracts.
(footnote: 4)  Further, in February 2007, Verizon contacted Kan-Pak and expressly repudiated the rental contracts.
(footnote: 5)  Looking at the entire record and indulging all reasonable inferences in favor of Verizon, we conclude that Verizon took no action after December of 2006 that ratified the rental contracts prior to its express repudiation of those rental contracts in February 2007.  Thus, Kan-Pak has failed to establish that it was entitled to summary judgment on the basis that Verizon ratified the rental contracts.

Verizon contends, in support of its motion for summary judgment, that the evidence establishes that it did not ratify the rental contracts as a matter of law.  As discussed above, Verizon received services and made monthly rental payments under the rental contracts for five to seven years.  Thus, 
Verizon retained some benefit under the rental contracts and the retention of this benefit is some evidence of ratification.  
See
 
Spellman
, 687 S.W.2d at 30.  Further, Verizon contends that GLM had no authority to contract on Verizon’s behalf, yet Verizon acknowledges that it “knew that Kan-Pak had installed compactors at its sites and what Kan-Pak was charging for each month’s rent.”  We believe that the presence of Kan-Pak’s compactors at five of Verizon’s Texas facilities and the invoicing of monthly rental charges gives rise to a reasonable inference that a reasonably prudent business would have investigated the basis of the monthly rental invoices and that, in the exercise of ordinary diligence, such an investigation would have revealed the terms of the rental contracts.  While we cannot say that Verizon’s accepting of the benefits of the rental contracts, without proof of its knowledge of the material terms of the rental contracts, was a ratification of those contracts, we do conclude that Verizon’s conscious indifference to discovering the terms of the rental contracts gives rise to a reasonable inference that it knew or, at least, should have known the material terms of the rental contracts.  As such, we conclude that the evidence raises a genuine issue of material fact as to whether Verizon ratified the rental contracts by making monthly rental payments under those contracts.  Therefore, we affirm the trial court’s denial of Verizon’s motion for summary judgment.

Equitable Estoppel

Finally, Kan-Pak contends that Verizon is equitably estopped from denying the validity of the rental contracts based on its payment of the monthly rental charges.  

A claim of equitable estoppel requires proof of five elements: (1) a false representation or concealment of material facts, (2) done with actual or constructive knowledge that the representation was false or that the concealed facts were material, (3) made to a party without knowledge or the means to discover the facts, (4) with intent that the other party act upon the representation or concealment, and (5) the other party detrimentally relied on the representation or concealment.  
See
 
Hausman v. Hausman
, 199 S.W.3d 38, 43 (Tex.App.–San Antonio 2006, no pet.).  

However, in the present case, Kan-Pak has presented no evidence that would establish, as a matter of law, that Verizon made any knowing false representation or intentionally concealed any material facts relating to the rental contracts.  As discussed above, it is possible that Verizon had knowledge of the terms of the rental contracts and continued to receive the benefit of those rental contracts, which might rise to the level of an intentional concealment of material fact, but the evidence does no more than raise an inference of that fact and, therefore, is insufficient to support Kan-Pak’s motion for summary judgment.  Because Kan-Pak has failed to establish as a matter of law that Verizon is equitably estopped from denying the validity of the rental contracts, the trial court could not have granted summary judgment on that basis.

Conclusion

Because genuine issues of material fact are raised by the evidence as to each of the grounds upon which Kan-Pak moved for summary judgment and because the evidence does not establish that Verizon did not ratify the rental contracts as a matter of law, we reverse the trial court’s grant of summary judgment in favor of Kan-Pak and affirm the trial court’s denial of Verizon’s motion for summary judgment.

Damages

Finally, Verizon contends that the trial court erred in denying its motion for new trial because the trial court’s award of actual damages was not discounted to present value.  Because we have reversed the trial court’s summary judgment, the award of damages has also been reversed.  As such, the issue of the propriety of the trial court’s award of damages is not before this Court.  The “judicial power does not embrace the giving of advisory opinions.”  
Gen. Land Office of Texas v. OXY U.S.A., Inc.
, 789 S.W.2d 569, 570 (Tex. 1990) (
quoting
 
Fireman’s Ins. Co. v. Burch
, 442 S.W.2d 331, 333 (Tex. 1968)).

Conclusion

For the foregoing reasons, we reverse the trial court’s grant of summary judgment in favor of Kan-Pak, affirm the trial court’s denial of Verizon’s motion for summary judgment, and remand the cause to the trial court.

Mackey K. Hancock

           Justice

FOOTNOTES
1:
At the hearing, the court indicated that the question of whether appellee had been arrested had not really been answered.  

2:
Doan cites to 
Combest v. State, 
981 S.W.2d 958, 960 (Tex. App.
–
Austin 1998, pet. ref’d) in support of his position.  However, in that case, both parties agreed that Combest was not under arrest at the time he impliedly consented to the blood test.

2:
3:
4:
5: